876        KENTUCKY REPORTS.   [Vol. 121.

Marion N. B. of Leb. v. Burton, Sheriff—Cit. N. B. of Leb. v. Same.

Case 110.—ACTIONS BY THE MARION NAT. BANK OF LEBA-
NON AND BY THE CITIZENS NAT. BANK OF LEBANON
AGAINST JOHN A. BURTON, SHERIFF, TO ENJOIN THE
COLLECTION OF CERTAIN TAXES.—January 31.

**Marion Nat. Bank of Lebanon v. Burton, Sheriff.**
**Citizens Nat. Bank of Lebanon v. Same.**

Appeals from Marion Circuit Court.

From judgments for defendant plaintiffs appeal.
Reversed.

1. Taxation — National  Bank  Stock — Exemptions — Non-taxable
   Government Bonds—The question involved is, whether shares
   of stock in national banks, when taxed under the statute
   of this State, are subject to have deducted the value of non-
   taxable government bonds held by the bank.
2. Discrimination—The purpose of the act discussed in this case
   is to place national banks with respect to taxation upon the
   same footing as State banks.  Any exemption from taxation
   which would be allowed a State bank, or any deduction that
   would be made in favor of a State bank must, under the
   act of 1902, be made in the assessment of the shares of a
   national bank.  In no respect may the moneyed capital in-
   vested in a national bank be taxed under the act at a higher
   rate than the moneyed capital invested in State banks, nor
   may any discrimination be made against the national banks.
3. Same—Intangible Property—If, as is the requirement of our
   statutes, and doubtless the practice of the board of assess-
   ments, in taxing the intangible property of State banks,
   which includes their capital not invested in tangible property,
   the tax is called a franchise, it is nevertheless an ad valorem
   property tax upon the capital of the bank, and, under the
   decision of the Supreme Court of the United States, the State
   banks are entitled to have deducted from such assessment so
   much of their capital as is invested in the non-taxable se-
   curities of the United States, it follows that shares in national
   banks must be treated as to their taxation in the same way,
   or at least so that they will not be discriminated against.

HELM, BRUCE & HELM, T. L. EDELEN and JOHN McCHORD for appellants.

N. B. HAYS, Attorney General, McQUOWN & BROWN and W. W. SPALDING for appellee.

OPINION BY JUDGE O'REAR—Reversing.

These two cases present a common question, and were heard together. Each of appellants is a national bank, located at Lebanon, Marion county, this State. Their shares were assessed for taxation by the assessor of Marion county. The valuation of each share for assessment was arrived at by ascertaining the market or actual value of the shares, deducting from that sum the value of the real estate owned by the banks, and dividing the remainder by the total number of shares. No deduction was made on account of United States bonds owned by the banks in which their capital had been invested. The whole of this tax, however, was collectible by the terms of the statute from the bank on account of its stockholders. While the tax was levied upon the shares of the capital stock, the bank was required to pay the tax on the behalf of its stockholders, charging same to each shareholder's stock account. It is conceded that this method of collecting the tax was not an imposition of any tax whatsoever against the bank. (First National Bank v. Commonwealth, 9 Wall., 353, 19 L. Ed., 701; Citizens' National Bank v. Commonwealth, 80 S. W., 479, 118 Ky., 51, 25 Ky. Law Rep., 2254; Town of London v. Hope, 80 S. W., 817, 26 Ky. Law Rep., 112.) The banks sued to enjoin the collection of so much of the tax as was represented by the proportion of the bank's capital invested in bonds of the United States. The question involved is whether shares of stock in national banks, when taxed under

the statute of this State, are subject to have deducted the value of non-taxable government bonds held by the bank.

Certain features of this question are so well settled, and have been so long settled, that it is not necessary to repeat the reasonings supporting the adjudications. For instance, it is now accepted without question that the bonds of the government of the United States are not taxable by the States and their municipalities. Nor is it deemed within the sovereign power of a State to tax the exercise of a franchise granted by the United States without the permission of the latter. On the other hand, shares of stock of national bank institutions, whose franchises are granted by the United States, are taxable by the express permission of the Federal Congress. It is also as well settled by the authority of numerous decisions of the Supreme Court that this permission to the States is a qualified one, and, to be exercised, it must be done substantially in the manner authorized by the act of Congress; that the thing permitted to be taxed is not the bank, nor anything owned by the bank, except its real estate, but the shares of its capital stock owned by its stockholders. The legal difference between capital stock and shares is recognized and respected.

The authority to tax the national bank shares is found in the forty-first section of the act of Congress of 1864 (Act June 3, 1864, c. 106, 13 Stat., 111), commonly denominated the "National Banking or National Currency Act," now incorporated in section 5219, Rev. St. U. S. [U. S. Comp. St., 1901, page 3502]. That section deals with the subject of taxation of national banks. After providing for the taxes to be paid to the United States government it con-

Vol. 121.]     JANUARY TERM, 1906.          879

Marion N. B. of Leb. v. Burton, Sheriff—Cit. N. B. of Leb. v. Same.

tinues: "(1) Provided, That nothing in this act shall be construed to prevent all the shares in any of said associations, held by any person or body corporate, from being included in the valuation of the personal property of such person or corporation in the assessment of taxes imposed by or under State authority, at the place where such bank is located, and not elsewhere, but at not a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State. (2) Provided, further, That the tax so imposed by the laws of any State, upon the shares of any of the associations authorized by this act shall not exceed the rate imposed upon the shares in any of the banks organized under authority of the State where such association is located. (3) Provided, also, that nothing in this act shall exempt the real estate of associations from either State, county or municipal taxes to the same extent, according to its value, as other real estate is taxed."

The statute of this State (Ky. Stats. 1903), under which the tax assessment was made in these cases, is as follows:

"Section 4092. All banks and trust companies shall file the report herein required by section 4077, sub-division 1, of this article, on or before the first day of March, one thousand nine hundred and three, and annually on or before March 1st, thereafter. Said reports shall be made up to and including the thirty-first day of the preceding December. The taxes herein provided for shall be due and payable on or before the first day of July next succeeding such report. Upon failure to make said report or to pay said taxes as herein required, said banks and trust companies shall be subject to the same fines and pen-

880 KENTUCKY REPORTS. [Vol. 121.

Marion N. B. of Leb. v. Burton, Sheriff—Cit. N. B. of Leb. v. Same.

alties as prescribed in section 4091, sub-division 1, of this article.

"Sec. 4092a. That the shares of stock in each national bank of this state shall be subject to taxation for all State purposes, and shall be subject to taxation for the purposes of each county, city, town and taxing district in which the bank is located.

"Sec. 4092b. For the purposes of the taxation provided for by the next preceding section, it shall be the duty of the president and cashier of the bank to list the said shares of stock with the assessing officers authorized to assess real estate for taxation, and the bank shall be and remain liable to the State, county, city, town and district for the taxes upon said shares of stock. When any of said shares of stock have not been listed for taxation for any of said purposes under levy or levies of any year or years since the adoption of the revenue law of eighteen hundred and ninety-two, it shall be the duty of the president and cashier to list the same for taxation under said levy or levies: Provided, That where any national bank has heretofore for any year or years, paid taxes upon its franchise as provided in article 3 of the revenue law of eighteen hundred and ninety-two, said bank shall be excepted fom the operation of this section as to said year or years; and provided, further, that where any national bank has heretofore, for any year or years, paid State taxes under the Hewitt bill in excess of the State taxes required by this act for the same year or years, said bank shall be entitled to credit by said excess upon its State taxes required by this act."

The latter part of section 4092b, supra, is not applicable to this case, for no question of omitted assessments, nor of commutation, is presented. The stockholders' interest in both State and national banks

is made liable to taxation, directly or indirectly, by the sections named. Is there a discrimination made in favor of shareholders of State banks over those of national bank stock? Appellants claim there is, in this: They assert that State banks are assessed upon their capital; that, being so assessed, so much of their capital as may be invested in the bonds of the United States is not subject to taxation, while, where the assessment is made upon the shares of the capital stock, as is the case with the national banks, the bonds of the United States in which the capital of such national banks may be invested are not deducted. It is true that, if the capital of a bank is invested in the non-taxable bonds of the Federal government, to that extent it is not liable to taxation by the State. (Bank of Commerce v. New York City, 2 Black, 620, 17 L. Ed., 451; Bank Tax Cases, 2 Wall., 200, 17 L. Ed., 793; Bradley v. People, 4 Wall., 462, 18 L. Ed., 433; Banks v. Mayor, 7 Wall., 22, 19 L. Ed., 57.)  ,

On the other hand it is equally well settled that where the State taxes, not the capital stock of the bank, but imposes a franchise tax upon the institution, whether the capital or other assets are invested in government securities is immaterial. (Society for Savings, v. Coite, 73 U. S., 594, 18 L. Ed., 897; Hamilton Mfg. Co. v. Massachusetts, 73 U. S., 632, 18 L. Ed., 904.)' We think it was also implied by what was said by the court in People ex rel. Bank of Commerce v. Commissioners, 2 Black, 628, 17 L. Ed., 451. A tax levied upon the shares of a bank is not a tax upon the property of the bank, and such a system of taxation does not tax bonds of the United States, though the capital stock of the bank may be invested in such bonds. (Van Allen v. Assessors, 3 Wall., 573, 18 L.

Ed., 229; First Nat. Bank v. Commonwealth, 76 U. S., 353; 19 L. Ed., 701; Lionberger v. Rowse, 76 U. S., 468, 19 L. Ed., 721; First Nat. Bank v. Chehallis, 166 U. S., 440, 17 Sup. Ct., 629, 41 L. Ed., 1096; Cleveland Trust Co. v. Lander, 184 U. S., 111, 22 Sup. Ct., 394, 46 L. Ed., 456.) Section 4092b, supra, follows the provision of section 5219, Rev. St. U. S., in that it lays the tax upon the shares of national banks, and not upon the capital. It taxes the property of the shareholder and not the property of the corporation. So far it is a literal compliance with the terms of the Federal permission.

It is not claimed that the rate of taxation or the assessment is higher than the rate or different from the assessment of "other moneyed capital in the hands of individual citizens" of this State. In fact, they are the same. The discrimination claimed to exist is the one prohibited by the second proviso of the section (section 5219, Rev. St. U. S.), which requires that the tax imposed upon the shares of national banks, against the shareholders, shall not exceed the rate imposed on the shares in State banks of the taxing State. We note that it has never been held by the Supreme Court that the State must levy its tax against the shares of the State banks, precisely as it does against the shares of national banks. On the contrary, it is held that the same methods need not be employed. It is sufficient if they are in fact equivalent, or at least not discriminatory against national bank shares. (Davenport Bank v. Davenport, 123 U. S., 83, 8 Sup. Ct., 73, 31 L. Ed., 94; San Francisco National Bank v. Dodge, 197 U. S., 70, 25 Sup. Ct., 384, 49 L. Ed., 669.)

People ex rel. Bank of Commerce v. Commissioners, 2 Black, 620, 17 L. Ed., 451, holds that the bonds

of the United States, when constituting the whole or
a part of the capital stock of a State bank, are not
taxable by the State (New York), whether the bonds
were assessed specifically or were included generally
in the aggregate of the taxpayer's property. The
opinion expressly points out the fact that by the
statutes of New York the capital of a bank was taxed
like the property of individual citizens, "and not, as
formerly, on the amount of the nominal capital, with-
out regard to loss or depreciation." The point actu-
ally decided was that where the taxpayer's property
is assessed in gross, which includes United States
bonds, it is invalid to the extent it includes the bonds,
which has never since been denied. In Van Allen v.
Assessors, 3 Wall., 573, 18 L. Ed., 229, there were
two points decided. The major point was that shares
of national banks are taxable by the States as against
the shareholders, although all or part of the bank's
capital may be invested in the bonds of the United
States, in which event no deduction is made on ac-
count of the bank's investment of its capital in the
bonds of the United States, unless not to do so works
a discrimination against National bank shareholders
in favor of State bank shareholders.

The minor point was that there was a failure of
the State to require of State banks the payment of
the same, or at least no greater rate of tax than was
exacted of shareholders of National bank stock; that
while National bank shareholders were assessed upon
their shares, which was not affected by the fact
whether the bank had or had not invested some of its
capital in United States bonds, the State banks were
assessed upon their capital, which may consist of
bonds of the United States, which would not be sub-
ject to State taxation. The court said: "It is easy

884     KENTUCKY REPORTS.     [Vol. 121.

Marion N. B. of Leb. v. Burton, Sheriff—Cit. N. B. of Leb. v. Same.

to see that this tax on the capital is not an equivalent for a tax on the shares of the stockholders.'' The reason it was not equivalent was that the State banks under the then existing New York statute were entitled to have deducted from their assessment so much of their capital as was invested in bonds of the United States.

From these authorities it is clear, and there would be no escape from it, that if our bank franchise tax is a property tax pure and simple, and is but another name for a tax upon capital stock, the system of taxing National bank shares which was adopted in the two cases at bar is contrary to the principle of the two cases just examined; for it would seem to follow that State banks could invest their capital in United States bonds, and would be entitled to deduct them in assessing the capital for taxation. This brings us to consider, first, whether the State of Kentucky levies the tax upon the capital stock in State banks or whether it is in fact and in law a purely franchise tax. Section 172 of the present Constitution of this State requires ''All property not exempt from taxation by this Constitution, shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale.'' Section 174 of the same instrument further provides: ''All property, whether owned by natural persons or corporations, shall be taxed in proportion to its value, unless exempted by this Constitution; and all corporate property shall pay the same rate of taxation paid by individual property. Nothing in this Constitution shall be construed to prevent the General Assembly from providing for taxation based on income, licenses or franchises.'' These sections of the Constitution intended to bring within the taxing system every

species of property in the State not expressly exempted by the Constitution, and to subject them to an equal rate of taxation. It was recognized that during the recent years one of the most valuable elements of corporate wealth was the corporate franchise. It was seen that it was unjust that this vast item of wealth, which got its being, as well as its protection under the law, from the State, should escape bearing its part of the common burden of the State government. So, it was expressly allowed that this quality of property might also be taxed.

When the Legislature came to work out the schemes of taxation required and permitted by the Constitution, it was mindful of the justice of the proposition that all corporate wealth, including corporate franchises, should be taxed equally with other property, or as nearly so as practicable. In its care to avoid what would be double, and therefore unequal taxation, the Legislature proceeded cautiously in its dealings with this new subject. It may not have gone as far as it safely might. The corporate franchise, the right to be a corporation where created by this State, and to conduct its corporate business in this State, whatever value might attach to such right and its exercise, are property of the corporation, frequently possessing great value. But the Legislature has not provided yet for the taxation of this quality of property, except in so far as it may incidentally enter into and be embraced in the value of other property owned by the corporation. The sections of the statutes bearing on the subject of the taxation of corporate franchises are from 4077 to 4095, inclusive. A study of these sections discloses that, in so far as specific methods of arriving at the value of the so-called franchise to be assessed

886 KENTUCKY REPORTS. [Vol. 121.

Marion N. B. of Leb. v. Burton, Sheriff—Cit. N. B. of Leb. v. Same.

are provided, they deal with the matter of finding the value of the capital stock of the concern, and tax it, after deducting tangible property of the corporation. This capital is not taxed at its nominal value, nor at its market value, but at its earning value. The latter undoubtedly may possess elements which could be reached by taxing either of the other values alone, and therefore is in some measure, at least, the imposition of a tax upon the corporation's franchise as such.

Section 4077 selects the corporations upon which the franchise tax may be laid. It enacts the legislative election to employ a franchise tax, which was expressly granted to the Legislature by the sections of the Constitution above quoted. It plainly declares that this franchise tax is "in addition to the other taxes imposed by law" on those corporations. It creates an assessment board to ascertain the value of the franchises to be taxed. Section 4078 provides for bringing before the assessing board the necessary information to enable it to make the assessments. This, in fine, is the character of business done by the corporation; its volume, as shown by the gross income from it; the profits; the total income from all other sources; the indebtedness as principal of the corporation; the amount, kind, and value of tangible property of the corporation, and where situated and assessed for taxation. Section 4079 seems to deal alone with common carrier corporations, by far the richest of the class upon which the franchise tax is imposed. It expressly directs that the assessing board shall, from the data above alluded to, with such other as may be necessary, such as length of lines of the corporation in and out of this State, and gross earnings of all its lines, fix the value of the capital stock of

Vol. 121.]     JANUARY TERM, 1906.          887

Marion N. B. of Leb. v. Burton, Sheriff—Cit. N. B. of Leb. v. Same.

the corporation, and from the amount so fixed shall
deduct the value of all its tangible property assessed
in this State. The section concludes: ''The remainder
thus found shall be the value of its corporate fran-
chise subject to taxation aforesaid.'' Section 4080
deals with the assessment of the franchises of foreign
corporations doing business in this State. It pro-
ceeds upon the same lines as above outlined in sec-
tion 4079. Section 4081, dealing further with com-
mon carrier corporations, particularly applies to
those engaged in interstate commerce. The section
says: ''The said board will fix the value of the capi-
tal stock as hereinafter provided; * * * and such
corporate franchise shall be liable to taxation,'' &c.
Section 4082 applies the foregoing provisions to per-
sons or associations engaged in the same business,
but who are not incorporated. Sections 4083, 4084,
4086, 4087, 4089, 4090 and 4091 deal with the certifi-
cation of the assessments, the payment of the tax into
the treasury, and penalizing failures of corporate
officers in omitting the duties imposed on them by
the foregoing sections. Sections 4085 and 4088 re-
quire that the property of all other corporations shall
be assessed in the name of the corporation, in the
same manner as that of natural persons, and, when
the corporation is assessed on its property or its
property and franchises, the shareholders shall not
be required to list their shares for taxation. Sec-
tions 4092, 4092a, 4092b and 4092c have already been
set out at length above. The remaining sections deal
with the assessment of building and loan companies
(whose shareholders are assessed upon their shares)
and turnpike companies, which are assessed upon
their franchises and tangible property as other cor-
porations above named are.

888 · KENTUCKY REPORTS. [Vol. 121.

Marion N. B. of Leb. v. Burton, Sheriff—Cit. N. B. of Leb. v. Same.

It will be observed from a study of the sections of the statute quoted and cited, that the Legislature did not intend to forego the assessment of any of the taxable property of any of these corporations. On the contrary, it is expressly stated that the purpose was to impose a tax on something in addition to the other taxes imposed on them by other provisions of the law. The comprehensive section 4020, Ky. Stats. 1903, shows with additional certainty that such was the legislative intention. The last-named section reads: "All real and personal estate within this State, and all personal estate of persons residing in this State, and of all corporations organized under the laws of this State, whether the property be in or out of this State, including intangible property, which shall be considered and estimated in fixing the value of corporate franchises as hereinafter provided, shall be subject to taxation unless the same be exempt from taxation by the Legislature, and shall be assessed at its fair cash value, estimated at the price it would bring at a fair voluntary sale." Section 4022, Ky. Stats. 1903, reads: "For the purposes of taxation, real estate shall include all lands within this State and improvements thereon; and personal estate shall include every other species and character of property—that which is tangible as well as that which is intangible."

In the Louisville Tobacco Warehouse Co. v. Commonwealth, 106 Ky., 165, 20 Ky. Law Rep., 1747, 49 S. W., 1069, 57 L. R. A., 33, speaking of this system of taxation, the court said: "From these provisions it is manifest that the so-called franchise tax is in reality a property tax upon all the intangible property of the corporations named in this act." Under the sections noted above, corporations not possessing

Vol. 121.]     JANUARY TERM, 1906.          889

Marion N. B. of Leb. v. Burton, Sheriff—Cit. N. B. of Leb. v. Same.

or exercising an exclusive privilege do not pay a franchise tax at all. The tax upon them is based alone upon the value of their tangible property, including money, notes and such items, with real estate, and personal chattels. As State banks and trust companies are not taxed upon such assests, except real estate and banking house fixtures (Commonwealth, By, &c. v. Bank of Commerce, 118 Ky., 547, 81 S. W., 679, 26 Ky. Law Rep., 407), and do possess and exercise exclusive franchise or privileges, that of banking, and are expressly named as being of the class which is required to pay a franchise tax, we gather from these sections and decisions that they pay on their capital, enhanced as it may be in value by the exercise of their special privileges or franchises. In this way only can all the sections be harmonized in their working effect, and the Constitution be not violated.

We are perfectly satisfied from a study of these sections that the Legislature has intended to tax all property of these corporations, State banks and trust companies included; that the tax is to be imposed upon their real property, just like all other real property is assessed, that their intangible property, which includes their capital and the value accruing to it by its earning capacity, employed, as it is, under the corporations's charter, shall likewise be taxed. The latter is called, for purpose of classification, a "franchise tax;" but it is none the less a property tax, imposed upon the intangible property of the corporation. It was not the purpose of the Legislature in these various sections to lay a franchise tax on these corporations in lieu of an ad valorem tax on their property. It would not have been competent under the Constitution for it to have done so. In Levi v. Louisville, 97 Ky., 394, 16 Ky.

Law Rep., 872, 30 S. W., 973, 28 L. R. A., 480, it was
so held.  If on the other hand, no tax whatever was
imposed on the capital or shares of State banks, a
discrimination would exist in their favor over all
other corporations, including national banks.  In our
opinion it follows that the Legislature, in taxing
State banks, has, by the provisions of the statutes
which have been quoted, required the assessment of
all their property, including their intangible prop-
erty, which latter is arrived at by considering the
earning value of their capital and by taxing the capi-
tal at that value less the value of their real estate
assessed separately.  In Commonwealth, By, &c. v.
Bank of Commerce, 118 Ky., 547, 81 S. W., 679, 26
Ky. Law Rep., 407, the question directly involved
was the liability of a State bank to assessment upon
its deposits.  It is undeniable that a bank owns its
general deposits.  It is to be taxed on "all its prop-
erty."  The question therefore arose, and was consid-
ered and decided by the court, as to how such a bank
is properly taxed on its property.  The court came to
the conclusion that it should not be taxed upon its
deposits; that the deposits were assessed against the
depositors.  The court said: "With the Constitution
of the State, the decisions of this court, and legisla-
tive history of the State before it, the Legislature
solved the problem of taxation of banks by requiring
them to pay taxes on the shares of capital stock, on
their surplus fund, undivided profits, and real estate
and franchises, and by requiring the depositors to
pay on their deposits."

It is true that the question directly up for decision
was the liability of the bank to taxation on its de-
posits alone.  But the investigation of the question
naturally led the court into the consideration of the

Vol. 121.]   JANUARY TERM, 1906.        891

Marion N. B. of Leb. v. Burton, Sheriff—Cit. N. B. of Leb. v. Same.

further question of how such banks were taxed on their property, so far as was necessary to determination of the principal question. The opinion is valuable in this case as showing at least that the court then understood that State banks were taxed upon their capital and its accretions, including their franchises.

It is a fact in law that a corporation owns its capital; that the stockholders own the shares of its stock. The capital, if invested in bonds, is none the less capital. So that, when the capital is taxed, that in which it is invested is necessarily taxed. If, as is the requirement of our statutes, and doubtless the practice of the board of assessments, in taxing the bank's intangible property, which includes its capital not invested in tangible property, the tax is called a "franchise tax," it is nevertheless in fact an ad valorem property tax upon the capital of the bank. Therefore, under the decisions of the Supreme Court of the United States, cited and quoted above, the State banks are entitled to have deducted from such assessment so much of their capital as is invested in the non-taxable securities of the United States. It follows that shares in National banks must be treated, as to their taxation, in the same way, or at least so that they will not be discriminated against. In a sense, and indirectly, a tax paid upon the capital of a bank is at last paid by its shareholders out of that which would otherwise come to them. So that a tax against a State bank, which is entitled to have deducted from the assessment of its capital so much of its capital as was invested in the bonds of the United States, discriminates in law against a national bank shareholder, who is assessed upon the value of his share in the National bank's capital, from which no such deduction is allowed.

This court has recently said, in suits between these appellants and the Commonwealth involving the validity of the present statute for taxing National bank shares, that there was no discrimination in favor of State banks against shareholders of National banks, because whatever deductions the former were allowed to make would be allowed also to the latter. What was then said is here repeated: "The purpose of the act (the same discussed in this case) is to place National banks, with respect to taxation, upon the same footing with State banks. * * * Under those provisions any exemption from taxation which would be allowed a State bank, or any deduction that would be made in favor of a State bank, must under the act of 1902, be made in the assessment of the shares of a National bank. In no respect may the moneyed capital invested in a National bank be taxed under the act at a higher rate than the moneyed capital invested in State banks, nor may any discrimination be made against the National banks. (Commonwealth v. Citizens' National Bank, 117 Ky., 946, 80 S. W., 158, 25 Ky. Law Rep., 2100.)" Also, Marion National Bank and Farmers' National Bank v. Commonwealth, 118 Ky., 51, 81 S. W., 686, 26 Ky. Law Rep., 62; Citizens' National Bank v. Commonwealth, Id. A statute which assessed the shares of State banks and trust companies to the shareholders, as is done by section 4092a and 4092b, dealing with National bank shares, would not entitle either shareholders in State or National banks to a deduction from their assessments on account of investments of the capital of such concerns in the bonds or other securities of the United States, or other non-taxable securities. (San Francisco National Bank v. Dodge, 197 U. S., 70, 25 Sup. Ct., 384, 49 L. Ed., 669.) Private

bankers would, of course, have to be put on the same, or at least no more advantageous, plane of taxation.

The judgments of the circuit court, not being in accord herewith, are each reversed, and the causes are remanded, with directions to overrule the demurrers and for proceedings consistent herewith.

Judges Paynter and Nunn dissent. Judge Cantrill absent.