CASE 23.—SUITS BY THE CITIZENS' NATIONAL BANK OF LEBANON, AND BY THE FIRST NATIONAL BANK OF LEXINGTON AGAINST S. W. HAGER, AUDITOR, AND OTHERS TO ENJOIN THE ASSESSMENT OF BANK STOCK FOR TAXATION FOR THE YEAR 1906.—November 22.

## Hager, Auditor, &c. v. Citizens' Nat. Bank of Lebanon

Appeal from Franklin Circuit Court.

R. L. Stout, Circuit Judge.

Judgment for plaintiffs, defendants appeal—Reversed.

1. Taxation—National Banks—Nature of Assessment—Act Construed.—In January, 1906, the court of appeals held that there was a discrimination against national banks in the method of assessing them and state banks, since state banks under existing laws, being assessed upon their capital and assets, so much of their capital as was invested in federal

Hager, Auditor, &c., v. Citizens' Nat. Bank of Lebanon.

bonds was not taxable, while national banks being assessed on their shares of stock, the value of such bonds in which their capital was invested was not deducted, and the court held such deduction should be allowed. Immediately thereafter the act effective June 11, 1906 (Laws 1906, p. 134, ch. 22, subd. 2), was enacted, and provides that an annual tax of the same rate as fixed upon other personalty for State purposes shall be imposed upon the value of the shares of the banks. Held, That such act provides for an assessment of the shares of stock of national banks and not for an assessment of their assets, which would be in express violation of the national banking act (Act June 3, 1864, ch. 106, 13 Stat. [U. S. Comp. St. 1901, p. 3454.]).

2.   Same—Act Governing Assessment.—The act of June 11, 1906 (Laws 1906, p. 134, ch. 22, subd. 2), governed the assessment for that year, since it was the legislative purpose to supersede the old law and have future assessments made under the new act, so that no loss would result to the State through the decision of the court of appeals rendered in January.

3.   Same—Delay in Assessment—Effect.—As the act under which the national bank shares were assessed for 1906 did not permit any discrimination against them, or impose any rate of taxation greater than was assessed upon other moneyed capital, they may not complain of a delay in the making of the assessment for that year.

4.   Same—Information   for   Assessment—Source—Materiality.— Where, in a suit by a national bank to require the state board of valuation and assessment to deduct the value of federal bonds held by it from an assessment for a given year, it does not claim that its shares were fixed at too high a valuation, nor show that it has attempted to obtain a reduction of the assessment, nor that any prejudicial error was committed in the manner of valuing the shares, except in failing to deduct the value of federal bonds, it is immaterial what information the board used in making the assessment.

5.   Same.—In a suit by a national bank to require the state board of valuation and assessment to deduct the value of federal bonds held by it from an assessment on its shares for State taxes in 1906, it is immaterial in what manner local assessments were made in that year upon such shares for purposes of counties, etc., or when they were made or when the taxes were paid thereunder, since the state board, under the express terms of the act effective June 11, 1906 (Laws 1906, p. 134, ch. 22, subd. 2), had no power to make assess-
vol. 127—13

ments for counties, etc., and was limited solely to assessments for State purposes.

6. Same—Taxes Upon Shares—Liability of Banks.—A bank may be required to pay taxes imposed upon the shares of its stock, having a right to enforce reimbursement from the shareholders.

7. Same—Information for Assessment—Right to Compel Bank to Give.—Since a bank may on behalf of its shareholders pay taxes due by them on their shares and recover from them the amount paid, the bank may be required to furnish information upon which the assessment of the shares may be made, so that all the shares may be taxed alike.

Chief Justice O'Rear and Judges Barker and Lassing dissenting.

N. B. HAYS, Attorney General, CHAS. H. MORRIS and JOHN W. RAY for appellant.

## CONCLUSION.

1. Within the restrictions that the rate of taxation shall not be greater than that imposed upon other moneyed capital in the hands of the individual citizens of this State, and that the non-resident shareholders of the appellee shall be assessed at the place where the bank is located, and not elsewhere, as required under section 5219 of the United States, the power of the legislature to impose taxes upon the shares of the appellee bank is unlimited, and any tax which keeps within these restrictions, impairs no federal right of the appellee bank.

2. The shares of the appellee bank do not fall within the list of property named in section 170 of the State Constitution which is exempt from taxation, and by the mandate of said section of the State Constitution, the General Assembly has no power to pass any law exempting or commuting the shares of the appellee from taxation.

3. Under the mandate of section 171 of the State Constitution, it is mandatory upon the legislature to provide by law an annual tax which shall be uniform upon all property subject to taxation.

4. By the mandate of section 172 of the State Constitution under the law as required to be enacted by section 171 of the State Constitution, all property shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale; and any officer of the board of valuation and assessment, appellants herein, who are authorized and whose duty it is to make said assessment, who shall fail so to do, shall

Hager, Auditor, &c., v. Citizens' Nat. Bank of Lebanon.

be guilty of a misfeasance and subject to removal from office.

5. It is the contention of the State, that no shareholder of the appellee, or any corporation or individual, can have any vested right under this Constitution in non-payment of a uniform rate of taxation for any year past or future; and that in order to comply with this constitutional mandate, the whole revenue law of this State is both retroactive and prospective in its application for the assessment and collection of taxes; and that the sections of Kentucky Statutes hereinbefore set out, to-wit, 4064, 4120, 4124, 4241 and 4090, are all retroactive in their application and have been so construed by this Court, and have been re-enacted in the present law of 1906, and that therefore, the whole revenue law of 1906 is both retroactive and prospective in its application to the assessment and collection of taxes as hereinbefore stated.

We, therefore, earnestly insist that whether the board of valuation and assessment acts under the method provided under the Act of 1906, or under the general revenue law of which it is but a part, that the board of valuation was vested with the power, and that it was its duty under the Constitution and the law to assess the shares of the appellee bank; and that this case should be reversed and remanded to the lower court with directions to sustain the demurer and dismiss the petition.

T. L. EDELEN for appellees.

J. D. & G. R. HUNT, JOHN T. SHELBY, JOHN McCHORD, JAMES P. HELM, ALEX P. HUMPHREY, HENRY BURNETT, PENDLETON & BUSH and YEAMAN & YEAMAN of counsel.

POINTS AND CITATIONS.

1. The state board of valuation and assessment had no election whether the old act or the act of 1906 was in force at the time it made the tentative assessment of June 12, 1906. (Constitution, section 60.)

2. In two provision of the old law, (1) that taxes must be paid by July 1st under a heavy penalty, and (2) that the bank has thirty days within which to protest against the tentative assessment, conclusively fix the date for the tentative assessment prior to the first of June in each year. No intentional postponement or negligent failure to perform this duty could possibly affect the rights of the banks which had duly made their reports under existing law.

3. It being the duty of the board of valuation and assessment to have these assessments under the old law, the ruling of this

court in the case of Marion National Bank v. Burton, sheriff, and Citizens' National Bank, against same, 28 Ky. Law Rep., 864, that the banks had a right to deduct the value of their government securities, is conclusive against the merits of this appeal.

4. The board of valuation and assessment, both under the provisions of the act itself and as admitted by the demurrer to the reply, adopt a taxation upon the assets of these appellees, and therefore the assessment was invalid, if not, then the deduction of government bonds was the only alternative.

5. Unless the old act was in force at the time these assessments were made, there could be no assessment for municipal purposes in cities of the second, third or fourth class.

6. If the assessment of June 12, 1906, be deemed a retrospective assessment, it must conform to the law in force during the period covered.

7. The act of 1906 is invalid as to national banks, because it is a taxation of their assets. Savings Bank v. Des Moines, 205 U. S., 503, and citations.)

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

These two appeals, presenting the same questions, will be disposed of together. The pleadings and evidence in each case being alike, we will use and refer, in the course of this opinion, to the record in the Case of Citizens' Bank of Lebanon.

The appellee by petition in equity sought to enjoin the appellants, who constitute the state board of valuation and assessment, from assessing its shares of stock for the year 1906 in the manner contemplated by the board, or from making any final assessment for that year, or, if that relief could not be granted, that it be enjoined from making any assessment without deducting the value of the United States bonds held by it; the relief really sought being to require the board of valuation and assessment to deduct the value of the United States bonds held by the bank. The petition charged that between Sep-

tember 1, 1905, and March 1, 1906, the bank under and pursuant to an act approved March 21, 1904, made and delivered to the Auditor of Public Accounts of the Commonwealth a report made in conformity to the act, furnishing all the information required by it, including the amount of the United States bonds owned by the bank. It owned on September 1, 1905, United States bonds to the amount of $75,000, which bonds had been purchased out of its capital stock and surplus. It further averred that the act of 1904 was repealed by an act of March, 1906, which went into effect on June 11, 1906; but that the state board of valuation and assessment on June 12, 1906, the day following the date when the act of 1906 became a law, made an assessment of the property of the bank upon its shares of stock, and, after ascertaining the value of its shares, deducted therefrom the amount of tangible property which was locally assessed by the assessing authorities of the county in which the bank was located, found the balance of its property to be $123,634. It avers that this assessment made by the board of valuation and assessment was wholly without authority in this: "(1) That it was made by the board of valuation and assessment on June 12, 1906, after it had lost all power to make any assessment under the report which had been theretofore filed on account of the repeal of the law under which the report was made. (2) If the plaintiff is mistaken in this, said report is erroneous, in that it wholly fails to credit the plaintiff by the amount of government bonds owned by it and which were shown by the report aforesaid."

With the petition is filed an exhibit that illustrates the method pursued by the board of valuation and

assessment in assessing the shares of stock. It reads as follows:

"Frankfort, Ky., June 12, 1906.

"Citizens' National Bank of Lebanon, Ky.

"You are hereby notified that the state board of valuation and assessment after due consideration of the report made to the Auditor September 1, 1905, has fixed the value of the shares in your bank as follows, to-wit.:

| | |
|---|---|
| Capital stock...................... | $100,000 00 |
| Surplus ......................... | 25,000 00 |
| Undivided profits ................ | 3,500 00 |
| Total assets ..................... | 128,500 00 |
| Number of shares ................ | 1,000 00 |
| Value per share ................. | 128 00 |
| Total value of shares............. | 128,500 00 |
| Tangible property deducted....... | 5,136 00 |
| Net amount subject to taxation.... | 123,364 00 |
| Amount of tax ................... | 612 82 |

To this petition appellants answered in two paragraphs; the first one being merely a traverse of the petition, the second averring that the assessment made by the board of valuation and assessment was duly authorized and the values fixed by it as shown in the exhibit correct. Afterwards an amended answer was filed, setting up "that the defendants, as the board of valuation and assessment, assessed and fixed the taxable value of the shares of all national banks, state banks, and trust companies in the State of Kentucky on June 12, 1906, and that said valuation so fixed and said assessment were made under an act of the General Assembly which became effective on June 11, 1906 (Laws 1903, p. 134, c. 22, subd. 2); that said board in arriving at the taxable value and assessment of the shares of all national banks and

state banks and trust companies took the capital, surplus and undivided profits of said national banks and state banks and trust companies, and from that deducted the real estate owned by said national banks, state banks, and trust companies, and that left the total value of said banks and trust companies, which were assessed by the state board of valuation and assessment, and that said board used exactly the same method in the valuation and assessment of all shares of national banks, state banks, and trust companies in the State." In a reply, appellee denied that "the valuation and assessment in controversy were fixed or made under an act of the General Assembly which became effective June 11, 1906; and, further, that even if the act of 1906 was in force and operative as to the valuation and assessment for the year 1906, and it was the legislative intent that said valuation and assessment should be made under the same, yet the said act did not authorize any assessment or valuation of the shares of stock in the plaintiff bank, because, while said act purports to provide for an assessment of the shares of all banks and trust companies, it really, in substance and effect, provides for a system of taxation of the assets themselves of all banks and trust companies, and is therefore unconstitutional and void as to national banks as being in conflict with the provisions of the act of Congress known as the 'National Banking Act' (Act June 3, 1864, c. 106, 13 Stat. 99 [U. S. Comp. St. 1901, p. 3454]), and states that the method of assessment which was made by the board was an assessment of the assets and property of the bank, and that, by the adoption of this method, the board assessed the plaintiff's assets and property for taxation." No responsive pleading was filed to this reply,

nor was it necessary there should have been, as the reply presented simply a. law question, the correct solution of which depends upon the proper construction of the act of 1906; that is, whether it provides for the assessment of the shares of stock or the capital stock and assets of the bank.

The deposition of the Auditor of Public Accounts, who is chairman of the board of valuation and assessment, was taken, and from it it appears: (1) That the board of valuation and assessment fixed the taxable valuation of the shares of national banks, state banks, and trust companies for 1906 on June 12, 1906. (2) That in arriving at the taxable valuation of the shares of this bank the board took the capital, surplus, and undivided profits, and from that deducted the real estate owned and assessed by it, which left the total value of the shares which were assessed by it. (3) That exactly the same method was pursued in ascertaining the value of the shares and fixing the assessment of state banks, national banks, and trust companies. (4) That the state banks and trust companies have accepted the valuation placed upon their shares, and have paid their taxes. (5) That none of the state banks or trust companies reported that they held or owned any government bonds; or, if they had so reported, the board would have declined to deduct the value thereof in fixing the assessments. (6) That the assessment referred to was made from information furnished by reports made as of the 1st of September, 1905, by national banks, and as of the 31st of December, 1905, by state banks and trust companies, which reports were filed before the 1st day of March, 1906. (7) That no effort was made to acquire any information concerning the value of the shares of stock or prop-

erty, except as it was shown in the reports.   At this
point it is convenient to state that by an act that
became a law June 17, 1902, all banks and trust com-
panies were required to make and deliver to the
Auditor of Public Accounts reports showing, among
other things, the capital stock, the number of shares,
the highest price at which the stock was sold within
12 months, the amount of the surplus fund and undi-
vided profits, and the value of other assets. as well
as the amount of indebtedness, and gross and net
earnings or income, and the amount and kind of
tangible property.   This act applied to all banks and
trust  companies  without  specifically  mentioning
national banks.   In 1902 another act was passed (Acts
1902, p. 312, c. 128), now section 4092a of the Ken-
tucky Statutes of 1903, providing that ''the shares
of stock in each national bank in this State shall be
subject to taxation for all state purposes, and shall
be subject to taxation for the purposes of each county,
city, town and taxing district in which the bank is
located.''   Section 4092b: ''For the purposes of tax-
ation provided for by the next preceding section, it
shall be the duty of the president, and cashier of the
bank, to list the said shares of stock with the assess-
ing officers authorized to assess real estate for
taxation, and the banks shall be and remain liable
to the State, city, town, and taxing district for the
taxes upon said shares of stock.   *   *   *.''   Section
4092c: ''All assessments of shares of stock contem-
plated by the two preceding sections of this act shall
be entered upon the assessor's books, certified and
reported by the assessing officers as assessments of
real estate are entered, certified and reported, and
the same shall be certified to the proper collecting
officers for collection as assessments of real estate

are certified for collection of taxes thereon. The
assessment of said shares of stock and collection of
taxes thereon as is contemplated herein may be
enforced as assessments of real estate and collection
of taxes thereon may be enforced.'' Under these
acts of 1902, the taxation was upon the assets and
property of state banks and trust companies, and
they were assessed by the state board of valuation
and assessment; but national banks were assessed
upon their shares of stock by the assessing officers in
the respective localities where the bank was situated.
In 1904, by an act approved March 21st (Laws 1904,
p. 145, c. 66), national banks were required to file
with the Auditor of Public Accounts annually on or
before March 1st reports made up as of the 15th day
of the preceding September; and, in order to deter-
mine the value of the shares of the national banks
and to assess them for state purposes and for pur-
poses of taxation in each county, city, town, and
taking district, it was made the duty of the chief
officer to show in the report required to be filed the
number of shares of stock, and par value of each
share, the amount of surplus fund and undivided
profits, the amount or value of all the real estate,
the amount of United States bonds, the amount of
its deposits, loans, and discounts, and such other
information as the Auditor of Public Accounts might
require. Upon these reports the state board of valu-
ation and assessment fixed the value of the shares of
national banks. But each bank was entitled to have
deducted from the total valuation placed on its shares
by the board the assessed value of its real estate.
This real estate it was the duty of national banks
to list with the assessor of each county, and pay the
taxes thereon to the sheriff. After final action by

the board, the Auditor of Public Accounts certified to the various counties where national banks were located the value of the shares of the banks, less the assessed value of the real estate, and upon this valuation of the local taxing district collected their taxes. No change was made by the act of 1904 in the method of assessing state banks and trust companies. They continued to be assessed under the act of 1902 until the act of 1906 became effective. In January, 1906, in the case of Marion National Bank v. Burton, Sheriff, 121 Ky. 876, 90 S. W. 944, 28 Ky. Law Rep. 864, this court, in conformity to the rule announced by the Supreme Court of the United States in numerous cases, held in an action involving the right of the bank to have a deduction on account of the United States bonds owned by it in which its capital and surplus had been invested that there was a discrimination in law, if not in fact, against national banks in the method of assessing state banks and national banks, in this: that state banks under the act of 1902 were assessed upon their capital and assets, and, being so assessed, so much of their capital as was invested in the bonds of the United States was not subject to taxation, while, in the case of national banks, the assessment under the act of 1904 being upon the shares of capital stock, the bonds of the United States in which the capital of these banks was invested was not deducted, and for this reason there was a discrimination in law against national banks, and their contention that they should be allowed to deduct the value of the United States bonds held by them was upheld.

To conform to this opinion and remove the discrimination in law that existed between the manner of assessing state banks and trust companies and

national banks, it was provided in subdivision 2 of an act that became a law June 11, 1906, that: "An annual tax at the same rate which may be fixed by law upon other personalty for state purposes is hereby imposed upon each one hundred dollars of value of the shares of state banks and trust companies incorporated under the laws of this Commonwealth, and of national banks doing business therein, and such tax shall be paid to the Treasurer of the State annually by such banks and trust companies for and on behalf of the owners of such shares of stock; and in addition thereto the said banks and trust companies shall pay to the local authorities in counties, cities, towns and districts, taxes at the same rate imposed upon other personalty therein." Section 2: "In order to determine the value of the shares of such trust companies, state and national banks, and to assess all shares in such state and national banks and trust companies for state purposes, it shall be the duty of the president, cashier or other chief officer of each state bank, trust company and national bank in this State, annually, between the first day of September and the first day of March, to make and deliver to the Auditor of Public Accounts a statement, verified by its president, cashier or other officer, in such form as the Auditor may prescribe, showing the following facts, to-wit: the name and postoffice address of the bank or trust company, the names of the officers, the number of shares of stock and the par and market value of each share; the amount of surplus fund and undivided profits; the amount of value of all real estate situated in this Commonwealth, held and owned by the bank or trust company on the first day of September of each year; the amount of its loans and discounts; the

amount of its deposits, and such other information as the Auditor may require. ²'

. It was further provided by this act that the Auditor of Public Accounts should, after the state board of valuation and assessment had fixed the value of the shares, furnish to each bank and trust company a statement of the value so fixed. and the amount of tax due to the State thereon, and that the bank should have 30 days from the day of receiving such notice to go before the board and ask for a change in the valuation, which the board might grant upon hearing evidence. The act also provided, in section 3, that: "Each bank and trust company shall be entitled to have deducted from the total valuation placed on its shares by said board the assessed value of its real estate in this State. It shall be the duty of the trust companies and banks to list with the county assessor of each county and with the assessing officer in each city, town and taxing district, its real estate and pay the taxes thereon to the sheriff, and to the collecting officer in each city, town and taxing district." Section 4: "Every state bank and trust company incorporated under the laws of this Commonwealth, and every national bank doing business therein, shall make to the assessing officer of the county, city, town or taxing district a report similar to that required by this subdivision to be made to the state board of valuation and assessment for assessment for state purposes. The assessing officer of the county, city, town or taxing district wherein any trust company, state or national bank is situated, shall assess the shares of such banks and trust companies for taxation for county, city, town and taxing district purposes in the manner prescribed in this subdivision for assessing the same by the state board of valua-

tion and assessment for taxation for state purposes; and such officer shall make out and return the assessment to the proper authorities of the county, city, town or taxing district at the same time and manner as prescribed by law for the return of the assessment of personal property.'' Section 5: ''All laws or parts of laws in conflict or inconsistent with this act, providing for other methods of taxation of shares of national banks or the taxation of trust companies and state banks incorporated under the laws of this Commonwealth, in the collection of taxes thereon, are hereby repealed.'' It will thus be seen that the act of 1906 provided for the assessment of the shares of stock in all state and national banks as well as trust companies; and, further, that by this act no substantial change was made in the manner of assessing national banks; the change being made only in the method of assessing state banks and trust companies. In brief, this act provided that state banks and trust companies should be assessed in the same manner as national banks had been assessed under the act of 1904. It will also be noticed that the state board of valuation and assessment only assesses shares for state purposes—the county, city, town, or taxing district authorities in which the bank or trust company was situated assessing its shares for local purposes. Under this act precisely the same method was adopted for the assessment of state and national banks and trust companies, both by the state board of valuation and assessment for state purposes and the local authorities for local purposes.

Two questions are presented by this record: First. Does the act of 1906 govern the assessment of state banks and trust companies and national banks for the year 1906, and were they assessed under that act,

or should the assessment for 1906 have been under the laws in force prior to 1906? Second. Assuming that the assessments were rightfully made under the act of 1906, does that act provide for an assessment of the shares of stock or an assessment of the capital stock and assets of the bank? In considering these questions, we will first take up and dispose of the second one.

The argument for the banks in support of their position is that the act of 1906, although nominally an assessment on the shares of stock, is in fact an assessment of the capital stock and assets of the bank; and this contention is chiefly rested upon an opinion of the Supreme Court of the United States in Home Savings Bank v. Des Moines, 205 U. S. 503, 27 Sup. Ct. 571, 51 L. Ed. 901, construing a statute of the State of Iowa which is said to be in substance and effect the same as our act of 1906. This case came up upon the complaint of a state bank, which insisted that it had the right to a deduction of the amount of the United States bonds held by it, upon the ground that it was assessed upon its capital stock and assets, and not upon its shares of stock. In the course of the opinion, which will be further noticed, the court held that if the assessment was upon its capital stock and assets, and not on its shares, it was entitled to the relief asked; and, having reached the conclusion that the assessment was upon the capital stock and not the shares of stock, declared that the bank had the right to the deduction claimed. The Iowa statute (section 1322) provided: "Shares of stock of national banks shall be assessed to the individual stockholders at the place where the bank is located. Shares of stock of state and savings banks, and loan and trust companies, shall be

assessed to such banks and loan and trust companies, and not to the individual stockholders.'' At the very outset, it will be noticed that the Iowa statute expressly provided that the shares of stock should be assessed to the banks, and not to the individual stockholders, while our act of 1906 declares in unequivocal terms that the tax is imposed upon the shares of stock, and shall be paid by the banks for and on behalf of the owners of the shares, and, further, that the Iowa law did not give the bank any right to recover from the stockholders the tax paid, while our acts does. These marked distinctions that go to the very heart of the matter are, we think, sufficient in themselves to show that the meaning and effect of the act of 1906 cannot be measured or judged by the construction placed upon the Iowa statute, and this is made plain by the opinion of the court, construing this statute, in which it is said: ''A superficial reading of the law would lead to the conclusion that the tax authorized by it is a tax on the shares of stock. The assessment is expressed to be upon * * * 'shares of stock of state and savings banks, and loan and trust companies'; but the true interpretation of the law cannot rest upon a single phrase in it. * * * We must inquire whether the law really imposed a tax upon the shares of stock as the property of their owners, or merely adopts the value of those shares as the measure of valuation of the property of the corporation and by that standard taxes that property itself. * * * Looking then further into the law, it appears that the shares are to be 'assessed to such banks,' * * * and not to the individual stockholders. When this is read, the doubt instantly arises whether the law intended to tax the corporation for property which it does not

own, but which, on the contrary, is owned by the stockholders. * * * By section 1322 national bank shares are assessed to the stockholders, and by section 1325 the corporations are made liable to pay the tax and are secured by a lien on the stock and dividends, which may be enforced by a sale. The state banks and corporations are excluded ex industria from this statutory right of reimbursement by confining it to the case of taxes assessed to the stockholders of taxes assessed to the stockholders of such corporations. This cannot include the case of state bank shares which are not so assessed. Nor can the corporations in the case at bar have by any possibility a common-law right to recover the tax paid from the shareholders. The law imposes no obligation on the shareholder. In paying the tax the corporation has paid its own debt, and not that of others, and there is nothing in such a payment from which the law can imply a promise of reimbursement. These taxes, therefore, are not to be paid by the banks as agents of their stockholders, but as their own debt, unless it is supposed that the law requires them to pay taxes upon property which they do not own, or the taxes must be regarded as taxes upon the property of the banks. A fair interpretation of the law is that the taxes are upon the property of the bank.'' This decision is placed upon the ground that, not only the letter, but the fair meaning, of the Iowa statute imposed a tax upon the capital of the bank, and not upon the shares of stock, and did not give the bank any right to recover from the shareholder the tax paid upon his shares of stock; and hence it was entitled to the exemption claimed. If we are permitted to inquire into the legislative intention in the enactment of the act of 1906 (2 Suther-

land on Statutory Construction, section 471), it is manifest that the purpose was to impose a tax upon the shares of stock, and not upon the property of the bank. When the opinion of this court in Marion National Bank v. Burton, Sheriff, supra, was handed down in January, 1906, the General Assembly was then in session. The defect in existing laws with reference to the taxation of banks was clearly pointed out in the opinion, which also indicated the manner in which the law could be changed, and quickly following this opinion the statutes were amended to conform to it; and also to place national banks upon exactly the same footing as state banks and trust companies so far as taxation was concerned. So that there can be no doubt about what the Legislature intended and attempted to do.

The next inquiry is, did they succeed in accomplishing this purpose? We think it is fair to give this statute such a construction as will effectuate the legislative intent if it can be done. That it can be a plain reading of the statute leaves no room to doubt. It expressly imposes the tax upon the shares of stock, and provides that the tax shall be paid by the bank for and on behalf of the owners of the shares, and that banks' may be required to pay taxes imposed upon the shares of stock is settled in Home Savings Bank v. Des Moines, supra, where the court said: "It, however, is not an uncommon, and is an entirely legitimate, method of collecting taxes to require a corporation as the agent of its shareholders to pay in the first instance the tax upon shares as the property of their owners, and look to the shareholders for reimbursement. * * * The tax assessed to shareholders may be required by law to be paid in the first instance by the corporations themselves as the debt,

not of them, but the shareholders, leaving to the corporation the right to reimburse itself for the taxes paid for their shareholders, either under some express statutory authority for their recovery or under the general principle of law that one who pays the debt of another at his request can recover the amount from him.''

Nor do we think there can be any question that under the act of 1906 the bank paying the tax may rerover from the shareholder the amount paid for him. It provides that the tax shall be paid by the bank ''for and on behalf of the owners of such shares of stock;'' and, when the bank in obedience to the mandate of the statute pays for and on behalf of its shareholder the taxes due by him upon his shares of stock, the law imposes an obligation upon the shareholder to repay to the bank the amount so paid for his use and benefit, and upon this obligation raised by law the bank may sue and recover. It is true that the value of these shares of stock is ascertained from data required to be furnished by the bank, and upon this information the assessment is made, but, if the Legislature is denied the power to fix the value of shares of stock in corporations upon information furnished to the assessing authority by the officers of the corporation, it would be wholly impracticable to fix with fairness and equality the value of the shares of stock. Our Constitution provides in section 172 that ''all property not exempted from taxation by this Constitution shall be assessed at its fair cash value, estimated at the price it would bring at a fair voluntary sale,'' and in section 174 that ''all property whether owned by natural persons or corporations shall be taxed in proportion to its value.'' Under these sections it is made the imperative duty

to assess all kinds of property, including shares of stock in corporations, at its actual value. It would be easy for assessing authorities to ascertain from corporations or other sources the number of shares, and their par value; but, if they had a market value in excess of the par value, this could not be ascertained except by the information required by the statute, which can only be furnished by the corporation. Under this method, the shares of each stockholder are assessed at the same value and taxed alike; while, if each individual shareholder was required to list his shares for taxation, there would probably, we might say certainly, be inequality in the valuation fixed by each shareholder. Aside from this, it would result in great inconvenience to the taxing authorities as well as loss of revenue to the State, as it frequently happens that shareholders in a single corporation are scattered through the State, many of them often being nonresidents. We therefore have no hesitation in concluding that as the bank may for and on behalf of its shareholders pay the taxes due by them upon their shares of stock and recover from them the amount so paid, so is it allowable to require it to furnish information upon which the assessment of these shares may be made, to the end that all the shares may be taxed alike, and each shareholder bear no more than his fair burden of taxation. Any other rule would necessarily result in inequality and injustice, and deny to the State the right to assess shares of stock in corporations at their fair market value, or to exact from shareholders the same amount of taxation imposed against other property in the State. This view has been expressly upheld by the United States Supreme Court in First National Bank v. Chehalis County, 166 U. S. 440, 17 Sup. Ct.

629, 41 L. Ed. 1069. There it was contended that an assessment and taxation of all the shares of stock of a national bank to the bank direct as owner thereof constituted a tax upon the bank forbidden by the national banking act. The act under which the tax in question was assessed provided: ''Every individual, firm, corporation or association of persons carrying on a general banking business in this State * * * shall be assessed * * * in the following manner. Annually at such times as provided for listing property for taxation in such bank or banking association as contemplated in this section shall by its accounting officer furnish the county or city assessor a statement verified by oath, giving the amount of capital stock, the amount or surplus or reserve fund, and the amount of undivided profits of such bank or banking association. The aggregate amount of capital, surplus and undivided profits shall be assessed and taxed as other like property in the State is assessed and taxed. Provided, at the time of listing the capital stock the amount and description of its local authorized investments in real estate shall be assessed and taxed as other real estate is assessed and taxed under this act—and the assessor shall deduct the amount of such investments in real estate from the aggregate amount of capital, surplus and undivided profits, and the remainder then taxed as above provided. Each bank and banking association shall be liable to pay any taxes assessed against them as the agent of each of its shareholders, owners or owner, under the provisions of this act, and may pay the same out of their individual profit account or charge the same to their expense account, or to the accounts of such shareholders, owners or owner in proportion to their

ownership." The similarity between that act and our act of 1906 in respect to the manner of arriving at the value and assessing the shares is so obvious as not to need further consideration. Nor does the fact that it in terms points out how the bank may recover from the shareholder the amount of tax paid for him constitute any distinction because the unequivocal right of recovery exists under our act, although not given in express terms.

In respect to the contention that trust companies and banks were not and could not have been assessed under the act of 1906, but should have been assessed under the acts of 1902 and 1904, we may remark at the outset that there is no pretense that the act of 1906 discriminates against national banks. It provides for identically the same method of assessing state banks and trust companies as national banks. We entirely agree with counsel for appellants that, if under the law it was the duty of the state board of valuation and assessment in fixing the value of the assets of state banks and trust companies to deduct from such value nontaxable securities, it became its duty in valuing the shares of national banks to make a like deduction; and that the state board of valuation and assessment could not answer a demand of the national banks to deduct from the total value of their shares the amount of their nontaxable securities by saying that, although the law required them to make such deduction from the state banks and trust companies, yet as a matter of fact they had not made it. Nor is it material in the course of this inquiry whether they held any such securities or not, as, if they were entitled in law to claim the exemption, national banks would be entitled to like advantage. This point was expressly decided in the Marion

National Bank case, heretofore mentioned. It is, however, an undisputed fact worthy of notice that the shares of state banks and trust companies were assessed under the act of 1906, and the corporations paid the taxes so assessed, and were not allowed or entitled to deduct the value of nontaxable securities held by them. In truth, as aptly said by counsel for the State, the national banks are seeking to escape their just measure of taxation and the same imposed upon state banks, and, in place of being discriminated against, are seeking to obtain a discrimination in their favor as against state banks and trust companies. When the act of 1902 was in force, state banks and trust companies were assessed under it, and the national bank insisted that this act gave the state banks and trust companies benefits and exemptions that national banks were not entitled to, but, when this law was repealed and the advantage allowed state banks removed, it would seem to follow that the objection of the national banks should also be removed. As the assessment was made on June 12th, the day after the act of 1906 went into effect, it is, of course, apparent that the assessment was not made upon reports furnished under the act of 1906, but under reports furnished under the act of 1904. At the time the assessment was made, all prior acts had been expressly repealed by the act of 1906. Hence, if the board of valuation and assessment made any assessment at all, it must have been made under this latter act. But, when it is considered that the appellee banks do not maintain that the valuation of their shares was fixed at too high a price, or to show they have made any effort to obtain a reduction in the amount of assessment, or that any error to their prejudice was committed in the manner of valuing

their shares, except in the failure to deduct United
States bonds, we regard it as immaterial what in-
formation the state board of valuation and assess-
ment had before it in making the assessment. This
inquiry would be pertinent if the valuation fixed or
the method of assessing it was assailed.

A good deal is said in argument on both sides upon
the question whether or not the act of 1906 had a
retrospective effect. Counsel for the State insist that
it did, while counsel for the bank as earnestly argue
that it did not. In our opinion it is not necessary
to give the act of 1906 a retrospective effect in order
to sustain the assessment made in 1906. The act
of 1906 was a remedial statute, enacted for the pur-
pose of curing defects in prior laws, and to place all
banking institutions in the State upon exactly the
same footing so far as taxation was concerned, and
must be liberally construed to effectuate its inten-
tion. Under the decision of this court in the Marion
County Bank cases, the Legislature was confronted
with the situation that, under the laws as they then
stood, the shares of national banks would not be
taxed as other moneyed capital invested in state
banks and trust companies, but the latter would, in
fact, be discriminated against, as they did not hold
national bonds. Knowing that this discrimination
would exist if the taxes payable in 1906 were assessed
under the existing law, the Legislature undertook to
change the law. There were the same reasons for
changing it as to the year 1906 as to subsequent
years. So, in the first section of the subdivision of
the act, relating to banks and trust companies, it pro-
vided as follows: "An annual tax at the same rate
which may be fixed by law upon other personalty for
state purposes is hereby imposed upon each one

hundred dollars of the shares of state banks and trust companies incorporated under the laws of this Commonwealth and of national banks doing business therein.'' The purpose was to supersede the old law. The taxes due by banks for previous years had been paid to the State, and it was intended that thenceforth the taxes as to banks should be assessed under the provisions of this act, so that no loss would result to the State treasury from the decision of this court in the Marion County cases. With this purpose in view, sections 5 and 6 were included in this subdivision:

''Sec. 5. All laws or parts of laws in conflict or inconsistent with this act, providing for other methods of taxation of shares of national banks or the taxation of trust companies and state banks, incorporated under the laws of this Commonwealth, and the collection of taxes thereon, are hereby repealed.

''Sec. 6. All national banks, trust companies and state banks shall file with the auditor their reports herein provided for on or before the 15th day of April, 1906, and annually thereafter on or before March the first. Said reports shall be made up to and including the first day of the preceding September.''

If it had not been intended that the taxes for 1906 were to be assessed under the act, there was no need for a special repealing clause in this subdivision; and the sixth clause must otherwise be rejected as meaningless. It is true the act did not take effect until June 11th, but the Legislature plainly intended that the assessment should be made under it, and it was done. Even if an assessment for 1906 had been made before the Legislature met, it could have

directed another assessment to be made and the taxes to be paid under it. And so, if the board had made an assessment under the act of 1904, it would have been its duty after June 11, 1906, to have made an assessment under the act of 1906, and the taxes should have been paid under that assessment. The fiscal year for 1906 did not expire until June 30, 1906 (Const., section 169), and clearly the board had the power at any time within the fiscal year to make an assessment for that year. Aside from this, it would scarcely be contended that the failure of an assessing officer to make an assessment within the time allowed by law would prevent him from making it within a reasonable time thereafter or render invalid the assessment so made, unless it could be shown that the meritorious rights of the property owner were prejudiced by the delay. Anderson v. City of Mayfield, 93 Ky. 230, 14 Ky. Law Rep. 370, 19 S. W. 598. If an assessing board by failing to perform a manifest duty should prejudice the meritorious rights of the property owner, no doubt he could obtain proper relief; but, in this case, the fact remains that the board of valuation and assessment in delaying this assessment did not prejudice the meritorious rights of the shareholders of appellee. The law under which the assessment was made was in every substantial particular identical with the preceding law of 1904. If the assessments had been made under it, the shares of appellee would have been assessed at precisely the same sum at which they were assessed. The argument that if its shares had been assessed under the act of 1904, and the capital of state banks and trust companies under the act of 1902, it would have had the right to deduct the value of the United States bonds owned, and hence

was prejudiced by the failure to assess under these laws, does not impress us either favorably or forcibly. Why should it have been entitled to this exemption? Certainly not on account of anything in the act of 1904, but because of a discrimination in the act of 1902, under which state banks were assessed, and, when this was removed, the technical right of national banks to exemption ceased to exist, and it was removed when the act discriminating in favor of state banks was repealed, and their shares were assessed under an act applying equally and alike to all banks. As the act under which the national bank shares were assessed did not permit any discrimination against them, either in law or fact, or impose any rate of taxation greater than was assessed upon other moneyed capital, or state banks or trust companies, they will not be heard to say that they were prejudiced by the delay of the assessing board. Nor are we in the disposition of the matter before us concerned with the manner in which local assessments were made for purposes of counties, cities, towns, and taxing districts, or when they were made, or when the taxes were paid thereunder. The state board of valuation and assessment under the act of 1906 had no power to make assessments for counties, cities, towns, or taxing districts, but was limited solely to assessing property for taxation for state purposes; the assessment and taxation of trust companies and banks, both state and national, for local purposes being left to the local authorities. The petition does not assail any assessment, except the one made for state purposes.

The federal courts have jurisdiction of questions involving the taxation of national banks, and in all cases decided by the Supreme Court of the United

States that we have examined it will be found that the court has uniformly held (a) that the tax must be upon the shares, and not upon the capital or property of the banks; (b) that no greater rate of taxation shall be placed upon national banks than is imposed upon other moneyed capital—the fundamental idea being to prevent discrimination against national banks. In so ruling the court has only endeavored to give full and fair meaning to the provisions of the national banking act that the taxing shall be upon the shares, and not be at a greater rate than is assessed upon other moneyed capital. It was not the intention of the national banking act, nor has it been the purpose of the Supreme Court, as we understand its opinions, to allow national banks any advantage over other moneyed capital or to permit any discrimination in their favor as against other banking institutions. Keeping in mind this proposition, and the undisputed fact that the shares of state banks and trust companies and national banks have been taxed under the same law and precisely alike, there is no merit in the contention of the appellee banks. Their efforts to escape a just and fair share of taxation by attempting to so construe the law and the acts of the board of valuation and assessment as to make it appear that they or their shareholders were or might have been discriminated against, when, in fact, they were not and could not have been, will not be sanctioned.

Wherefore the judgment of the lower court is reversed, with directions to dismiss the petition in each case.

Chief Justice O'Rear and Judges Barker and Lassing, dissent.