CASE 69—PROCEEDINGS BY THE COMMONWEALTH BY AUDITOR'S AGENT
AGAINST BANK OF COMMERCE TO LIST CERTAIN PROPERTY FOR
TAXATION.—JUNE 18.

# Commonwealth v. Bank of Commerce.

| | |
|---|---|
| 118 | 547 |
| 121 | 889 |
| e121 | 890 |

| | |
|---|---|
| 118 | 547 |
| d126 | 217 |
| 126 | 575 |
| 127 | 613 |

APPEAL FROM JEFFERSON CIRCUIT COURT, C. P BRANCH, FIRST DIVISION,
UPTON W. MUIR, JUDGE.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS.  AFFIRMED.

TAXATION—BANKS—DEPOSITS—ASSESSMENTS—AUTHORITY.

Constitution, section 171, provides that taxes shall be uni-
form, and shall be levied and collected by general laws.  Sec-
tion 172 enacts that all property not exempted by the Constitu-
tion shall be assessed at its fair cash value.  Section 174 requires
that all property, whether owned by natural persons or corpora-
tions, shall be taxed in proportion to its value, unless exempted,
and declares that all corporate property shall pay the same rate
of taxation paid by individuals.  HELD, that banks are not re-
quired to pay taxes on the money deposited with them by their
customers, or assets which represent it, but that the depositors
are required to pay the tax on such money.

TAYLOR & LUCAS, FOR APPELLANT.

## POINTS AND AUTHORITIES.

1. Statutory authority.  Ky. Stat., secs. 4241, 4260.

2. Every species of property shall be taxed.  Present Consti-
tution of Kentucky, secs. 171, 172, 174; Ky. Stat, secs. 4020,
4022, 4053.  Of these constitutional and statutory provisions this
court said in the case of Scobee, Sheriff, v. Bean, 22 Ky. Law
Rep., 1076, they "are sufficiently specific to authorize the taxa-
tion of every species of moneyed capital in the State."

3. The notes, bonds, accounts and other chose in action of a
bank are not exempt from taxation.  Present Constitution of
Kentucky, sec. 3 (Bill of Rights), and sec. 170; Ky. Stat., sec.
4026.

4. The burden is on the bank to show the exemption, by clear
and unmistaken authority.  Cooley on Taxation (3d Ed.), 356;
Board of Trustees v. Bell County C. & I. Co., 16 Ky. Law Rep.,

283; Newport v. Masonic Temple Assn., 103 Ky., 592, 20 Ky. Law Rep., 266; Bradley v. McAtee, 7 Bush, 667; Louisville Canal Co. v. Com., 7 B. Mon., 160; Deposit Bank of Owensboro v. Daviess Co., 102 Ky., 174, 19 Ky. Law Rep., 248; German Bank v. Louisville, 22 Ky. Law Rep., 9.

5. Banks not only own their notes, bonds, etc., but also their deposit fund. Williams v. Rogers, 14 Bush, 778; Taylor v. Taylor, 78 Ky., 471; Keene v. Collier, 1 Metc., 417; Armstrong, Receiver v. National Bank of Boyertown, 90 Ky., 436; Morse on Banking, secs. 573, 578; Planters' Bank v. Union Bank, 16 Wall., 483 (21 L. Ed., 473); Marine Bank v. Fulton Co. Bank, 2 Wall., 252 (17 L. Ed., 785); Oulton v. German S. & L. Soc., 17 Wall., 109 (21 L. Ed., 618); Commercial N. B. v. Armstrong, 148 U. S., 50 (37 L. Ed., 363); Scammon v. Kimball, 2 Otto, 362 (23 L. Ed., 483); Thompson v. Riggs, 5 Wall., 663 (18 L. Ed., 704); State v. Shove, 96 Wis., 8, 65 Am. St. Rep., 19, 37 L. R. A., 145; Perley v. Muskegon Co., 32 Mich., 136, 20 Am. St. Rep., 639; Chesapeake Bank v. Swain, 29 Md., 498.

6. Deposits are funds borrowed by the bank. The bank's bonds, notes and other choses in action may have been acquired through the investment of borrowed funds. Assets are taxable, whether acquired by the investment of borrowed funds or not. Henderson Bridge Co. v. Com., 99 Ky., 623, 17 Ky. Law Rep., 397 (a leading Kentucky case in point); Railroad Co. v. Jackson, 7 Wall., 263; The Cleveland, &c., R. R. Co. v. Com., 15 Wall., 300.

7. Securities held by a bank are not transient, but if they were, transient property is taxable where found on assessment day. Meyers v. County Com., 55 Am. St. Rep., 349; Brown v. Houston, 114 U. S., 622, 29 L. Ed., 257.

8. It is not double taxation to require the lender (the depositor) to pay on his credit and the borrower (the bank) on its assets. Henderson Bridge Co. v. Com., 99 Ky., 623, 17 Ky. Law Rep., 397; Nevada v. Carson City Saving Bank, 17 Nev., 146; Exchange Bank v. Hines, Treas., 3 Ohio St. Rep., 5; Savings Bank of New London v. Town of New London, 20 Conn., 111.

9. Courts can not question wisdom of legislative acts, if they conform to the Constitution. In Deposit Bank of Owensboro v. Daviess County, 102 Ky., 174, 19 Ky. Law Rep., 248, this court said: "It is our business to obey the Constitution and respect the Statutes enacted in accordance therewith." Common Council v. Assessors. 91 Mich., 94; Robinson v. The Red Jacket, 1 Mich., 171; Green v. Graves, 1 Doug., 351; Attorney-General v. Preston, 56 Id., 177.

10. Franchise taxes are "in addition," and therefore not a bar

Commonwealth v. Bank of Commerce.

to property taxes. Ky. Stat., sec. 4077; Henderson Bridge Co. v. Com., 99 Ky., 623, 17 Ky. Law Rep., 397.

11. Revenue agent's power to act independently of the auditor. Ky. Stat., secs. 4258, 4259; Sebree v. Com., 25 Ky. Law Rep., 121; Coulter, Auditor, &c. v. Denny, 23 Ky. Law Rep., 1619.

DODD & DODD AND HUMPHREY, BURNETT & HUMPHREY, FOR APPELLEE.

## POINTS DISCUSSED.

1. Whether Frank A. Lucas, as auditor's agent, should be allowed to institute and prosecute these proceedings without the consent and over the protest of the auditor.

2. Whether State banks should be required to pay taxes on the money deposited with them by their customers, and on assets which temporarily represent such deposits, or on either.

(a) Whether the measure of a State bank's taxable estate is not limited to its capital stock, surplus funds, undivided profits, franchise, and real estate or tangible property.

(b) If the deposits be taxable against the bank, then on what basis or measure? Can the bank recoup itself by charging the same against its depositors under section 4033, Kentucky Statutes, and, if so, would it not be double taxation against the same deposit, as the depositor is conclusively presumed to have already paid one full taxation for each year?

(c) Whether the statutes confer an inquisitorial or visitorial power to coerce the banks to furnish a list of their depositors and the balances belonging to them at any specified time?

(d) If so, does this apply to nonresident depositors or to those whose deposits are exempt by law from taxation, such as Federal, State or subordinate governmental, county or municipal taxing sovereignties?

## AUTHORITIES.

1. Authority of auditor's agent to institute and prosecute the proceedings. Ky. Stat., secs. 4258, 4260, 4261, 4262, 4263, 4267, 4058; Hoke v. Com., 79 Ky., 571.

2. Are the deposits of depositors taxable against the bank? Deposit Bank of Owensboro v. Daviess County, 102 Ky., 214; Com. v. Gaines, 80 Ky., 495; Spalding v. Com., 88 Ky., 140; Youtsey v. Com., 110 Ky., 559, 560; Louisville & Evansville Mail Co. v. Barbour, 88 Ky., 73; Whitaker, Auditor's Agent v. Brooks, 90 Ky., 68; Ky. Stat., secs. 584, 593, 4020, 4077, 4078, 4092; Coulter, Auditor v. Louisville Bridge Co., 24 Ky. Law Rep., 809;

Henderson Bridge Co. v. Negley, 23 Ky. Law Rep., 747; Langdon-Creasy Co. v. Trustees, 25 Ky. Law Rep., 823.

3. The bailee theory. Livingston v. City of Paducah, 80 Ky., 658; Com., by, &c. v. C. & O. Ry. Co., 25 Ky. Law Rep., 1126-1130.

4. Practical construction. Attorney General v. Drummond, 1 Dru. & Wal., 366 (2 H. L. Cas., 837); Chicago Ry. Co. v. Northern Pacific Ry. Co., 101 Fed Rep., 795; Louisville Tobacco Warehouse Co. v. Com., 106 Ky., 180; Aetna Life Ins. Co. v. Coulter, Auditor, 25 Ky. Law Rep., 197; Turnpike Company v. Shadburne, 1 Ky. Law Rep., 325; Henderson Bridge Co. v. Negley, Sheriff, 23 Ky. Law Rep., 747; Chicago v. Sheldon, 9 Wall., 54; Topliff v. Topliff, 122 U. S., 131; District v. Gallaher, 124 U. S., 510; Newton v. Wooley, 105 Fed. Rep., 546; Accumulator Co. v. Dubuque R. R. Co., 64 Fed. Rep., 74; Lumber Co. v. Stump, 18 C. C. A., 569; Publishing Co. v. Swift, 97 Fed. Rep., 296; City of Westminster v. Westminster Bank, 92 Md., 66.

OPINION OF THE COURT BY JUDGE PAYNTER—AFFIRMING.

Through Frank A. Lucas, claiming to represent the Commonwealth, as auditor's agent, three proceedings were instituted against the appellee to compel it to list for taxation of the date of September 15, 1899, notes secured by mortgage of the fair cash value of $——; other notes of the fair cash value of $——; certain accounts of the fair cash value of $——; cash on hand of $——; cash on deposit with other banks, or due from other banks, of $——; certain sums due as overdrafts from sundry persons and corporations of $——; certain bonds and stocks of the value of $——; and in the aggregate of the fair cash value of $4,008,125.34. By each of the proceedings it is sought to compel the appellee to list the same kind of property for taxation for the years 1900, 1901, 1902, and 1903, but the aggregate amount varying with the years. We shall designate, for convenience, the proceedings by numbers. By proceeding No. 1 the plaintiff seeks to compel the appellee to list the property sought to be taxed upon the theory that the appellee owns it, and that it has been omitted from

assessment to it. By the second proceeding it is sought to compel the appellee to list the property in question as trustee. By the third, to list it as bailee in possession. By agreement the three proceedings were heard together. It was eminently proper to hear them together, because the same property is sought to be taxed for each of the years named.

The cash and assets sought to be assessed were acquired with money deposited by the bank's depositors, or in part by the money which was paid by the stockholders, and the accumulations thereon, or by the money derived in both of the ways named. For the bank it is contended that it is an effort to tax the money deposited by its depositors. For the appellant it is claimed that this is a misstatement of the purpose of the proceedings; that plaintiff only seeks to tax certain assets of the bank. The plaintiff does not in terms state how the bank derived the property sought to be taxed, but, when we take the three statements together, it may fairly be concluded that it. is the purpose to tax property derived from sums deposited by appellee's depositors. This conclusion is supported by the fact that the bank's capital stock, surplus, and undivided profits were assessed by the board of equalization in fixing its franchise tax. The correctness of that assessment is not questioned, and it is admitted that it paid its tax due thereon. It is the theory of the appellant that the property sought to be taxed belongs to the appellee, or is held by it for others, and that it should be assessed regardless of the question as to how it was acquired or is held.

The claim that the property should be assessed as omitted property is based upon sections 171, 172, and 174 of the Constitution, and section 4020, Ky. St., 1903. Section 171, in speaking of taxes, provides: "They shall be uniform

upon all property within the territorial limits of the author-
ity levying the taxes; and all taxes shall be levied and col-
lected by general laws." Section 172 provides: "All prop-
erty, not exempted from taxation by this Constitution, shall
be assessed for taxation at its fair cash value." Section
174 provides that "all property, whether owned by natural
persons or corporations, shall be taxed in proportion to its
value, unless exempted by this Constitution; and all corpor-
ate property shall pay the same rate of taxation paid by
individual property."

Section 4020, Ky. St., 1903, was enacted pursuant to the
provisions of the Constitution. A bank does not keep the
funds arising from the contributions of shareholders and
depositors separate. Therefore the only way to approxi-
mate the amount which each class may have contributed
to the cash on hand, and to the purchose of notes, bills of
exchange, etc., is by proportion. Evidently the auditor"s
agent, in his calculations, segregates the items of value
which produce the total credits of the bank, and thus as-
certains the value of the alleged omitted property. The
amount thus ascertained is the proportion of the contribu-
tion made by the deposits. The law, in the affairs of state
and men, regards the substance of things. While the audi-
tor's agent does not, *eo nomine,* seek to assess the appellee's
deposits, yet he in effect does so. The Legislature was con-
fronted by a condition. In its wisdom, it knew that banks
and similar institutions are necessary to conduct the busi-
ness affairs of the State. It likewise knew that, to estab-
lish and conduct a bank, it was necessary that persons
should contribute a banking capital, and that persons should
deposit their money therein. It knew that persons would
not contribute their money to acquire a banking house,
equip it with vaults, safes, and furniture, and put it in

charge of salaried officers and clerks, if there were to be
no depositors. Necessarily those who contributed to the
capital and those who might contribute to the deposit ac-
count were under a duty to pay taxes. The ques-
tion then necessarily arose as to how this burden of taxa-
tion should be borne. The Legislature recognized it had a
delicate and difficult question for solution. Presumably it
recalled the legislative history of the State on the subject
of bank taxation, and the public necessity for solvent banks
and financial institutions. It likewise knew that the Con-
stitution required that taxation, in so far as possible, should
be equal and uniform. It also knew that contributors to the
capital stock and to the deposit account were equally neces-
sary to establish and successfully conduct a banking or
financial institution. It knew that contributors to the capi-
tal stock expected to make a profit in the conduct of the
business, and to be paid for the risks they assumed in
handling the money of its depositors. It knew the deposi-
tors* expected to be compensated for making the deposits
by way of interest on them, or by way of conveniences or
benefits in a business way. It knew that most of the de-
positors in banks could withdraw their deposits on demand,
and that therefore it was necessary to keep on hand money
to meet such demands, and it so provided. It was aware
of the fact that in the case of Commonwealth v. Gaines,
80 Ky., 495, 4 R., 379, in construing a statute authorizing
the assessment of property in the possessory control of one,
the court said: "The rule should not be misapplied to an
absurd assessment of property which may be loaned to a
neighbor for a day, or that necessarily passes through dif-
ferent hands  in its temporary use, and which may be easily
and properly assessed to the owner." It likewise was aware
that in Spalding v. Commonwealth, 88 Ky., 140, 10 R., 714,

10 S. W., 420, the court held it would not be proper to charge officers like receivers and sheriffs with taxes upon funds transiently in their hands, and which may happen to be held by them upon the particular day when the owner or possessor is chargeable with the taxes. It presumably knew that in Louisville & Evansville Mail Co. v. Barbour, 88 Ky., 73, 10 R., 836, 9 S. W., 516, the court had under consideration the question whether, under a law requiring stockholders to list and pay taxes on their stock in corporations (it being alleged they had failed to do so), and held the corporation could not be compelled to list and pay taxes on its property represented by the stock, as it would be double taxation, and that the Legislature had no power to directly impose double taxation. Likewise the Legislature presumably knew that after the decision in Louisville & Evansville Mail Co. v. Barbour, the law was changed, and the corporation was required to pay taxes on its property, instead of the shareholders paying taxes on their stock; and the court, in Whitaker, Auditor's Agent v. Brooks, 90 Ky., 68, 11 R., 871, 13 S. W., 355, held that the corporation, and not the shareholders, should pay the tax.

It has never been the policy of the Commonwealth to require bankers and banking institutions to pay taxes on their deposits, or on that part of them preserved in cash, or on the part invested in notes, bills of exchange, etc.. So far as we are advised, no effort to do so has ever been made in a constitutional convention or in any Legislature assembled in the State. Neither has any political party or association of voters, so far as we are aware, ever advocated the justness or advisability of such a provision in the tax laws of the State. It therefore is fair to conclude that the members of the several constitutional conventions and the many members of the Legislatures which have assembled in

the State did not deem it a wise policy to ingraft in the tax laws such a feature. Besides, it is proper to conclude that the sovereigns who were represented in the several constitutional and legislative bodies approved the action of those bodies, as they never demanded such legislation. In addition to this, the Legislature has enacted laws from time to time which show that such a system of taxation, in its judgment, should not be established. And the only time the court has spoken upon the question it said that such a system of taxation was not provided by law but that another and different one was established. If this feature of taxation is required by the Constitution, then we must ascribe to the constitutional convention a purpose to make necessary legislation which was never suggested, much less demanded, by the taxpayers of the State, the practical effect of which would be to put out of business State banks and trust companies, and likewise national banks, if they can be subjected to the same taxation as other moneyed institutions in the State. To illustrate, it is safe to say that the average tax rate for State, county, municipal and school purposes is $2 on each $100 of valuation. If a State bank has a capital stock of $25,000, and has a deposit of $100,000, the tax paid annually would be $2,500—the equivalent of 10 per cent. on the capital stock of the bank. The effect would be to drive out of business a large number of financial institutions. To construe the law so as to have that effect would be to adjudge that the constitutional convention and Legislatures intended to destroy much needed financial institutions, or that they heedlessly enacted a law without considering the consequences to flow from its execution. We are unwilling to adjudge, in effect, that the constitutional convention or the Legislature ever had such a purpose, or was so inconsiderate of the consequences of their

acts. Suppose that the national banks can not be made to pay taxes on their cash, notes, bills of exchange, etc., but only on their shares of stock, surplus fund, and real estate, and State banks and trust companies should attempt to do business under the proposed scheme of taxation; what would be the relative effect on these financial institutions? It can be best illustrated by taking a national bank with a like capital stock of a State bank to which we have referred, to wit, $25,000 actual value, with a deposit account of $100,000. If the rate is $2 on each $100 of valuation, it would pay $500 taxes, while the State bank would pay $2,500—exactly five times as much as would the national bank. This would be the effect if both banks were located on the same street in the same city. It would require but little consideration of the question to reach the conclusion that national banks would not long have competitors doing business under charters granted by the State. With the Constitution of the State, the decisions of this court, and legislative history of the State before it, the Legislature solved the problem of taxation of banks by requiring them to pay taxes on the shares of the capital stock, on their surplus fund, undivided profits, real estate and franchises, and by requiring the depositors to pay on their deposits. It is, in effect, urged that the requirements of the Constitution are not complied with when the depositor is required to list for taxation the money he has on deposit, because, in law, the relation of debtor and creditor is sustained between the bank and the depositor, and a deposit, when made, becomes the property of the bank. The courts so hold in adjoining the rights between the parties in the settlement of the bank's affairs, or in passing upon the question involving the rights of the bank, its depositor, and third persons. However, that does not prevent the

Legislature from regulating how the bank and its depositor shall share the burden of taxation on the fund created by their respective contributions. When it has done so, it has not violated the rule requiring uniformity and equality in taxation. Two striking examples of what the Legislature can do with reference to the listing of property for taxation, etc., may be given. The statute makes the distiller liable for the taxes on whisky owned either by a resident or nonresident of the State, though it is actually in the custody of the United States government. The national banking act provides that shares of stock in national banks shall be assessed for taxation. Of course they belong to the shareholders, and neither the corporation nor its officers have any interest in them. Notwithstanding that neither the corporation nor its officers owned the shares of the stock, the Legislature required certain officers of the bank to list them for taxation, and to pay the tax thereon with the funds of the bank. This court sustained the validity of the act imposing a tax on whisky, and the act for the assessment and payment of the taxes on the shares of stock in the national banks. Besides, the Supreme Court of the United States has held acts similar to the last named act valid. If it is competent for the Legislature to enact the statutes referred to—and we think it is—it is equally so for it to preserve for taxation the fund contributed by the shareholders, accumulations on it, and the value of the franchise, and likewise preserve the deposits for taxation, and make the bank pay on its contributions, etc., and the depositors on their contributions, instead of requiring the bank to pay on the assets acquired by the use of the moneys so contributed by both. The question involved is not a new one to this court. It thoroughly considered the question of the taxation of banks in the State in Deposit Bank of Owensboro v. Daviess

County, 102 Ky., 214, 19 R., 248, 39 S. W., 1030, 44 L. R. A., 825, where the court said: "The banks are not required to pay tax on the money deposited with them by their customers, or on assets which represent it. Owing to the particular character of the business which they conduct, they are *quasi* trustee of their depositors, and, under the law, the depositors are required to pay the tax on the money so deposited. The bank should be required to pay tax on the shares of capital stock, on their surplus funds, undivided profits, franchises, and their real estate." Many banks have been organized in the State since the decision of the court, and banking business has been adjusted to the conditions imposed thereby. We adhere to the conclusion that "banks are not required to pay taxes on the money deposited with them by their customers, or assets which represent it, . . . and that, under the law, the depositors are required to pay the tax on the money so deposited." Having reached this conclusion, it necessarily follows that the bank, as *quasi* trustee or bailee or otherwise, is not under a duty to list the property sought to be assessed by these proceedings; hence neither can be maintained.

The judgment is affirmed.

Petition for rehearing by appellant overruled.