CASE 61.—ACTION BY THE COMMONWEALTH BY GEORGE ALEXANDER, REVENUE AGENT, AGAINST S. E. LEDMAN TO RECOVER TAXES ON STOCK IN THE LOUISVILLE TRACTION CO.—December 18.

## Commonwealth v. Ledman

127 603
135 330
j135 789

Appeal from Jefferson Circuit Court; Chancery Branch; Second Division.

Samuel B. Kirby, Judge.

From a judgment dismissing the petition the plaintiff appeals—Affirmed.

1. Taxation—Taxable Assets—Corporations—Organization Expenses.—Money paid by a corporation for the purpose of effecting an organization or putting the company into legal shape to do business is not a taxable asset in the hands of

the company, as the value of the corporation's franchise is not dependent on the amount expended in creating it.

2. Same—Foreign Corporations—Payment of License Fees.— That a corporation, organized in New Jersey, but doing all of its business in Kentucky, was required to pay an annual license fee to the State of New Jersey to continue its corporate existence, did not enhance the value of its franchise taxable in Kentucky.

3. Same—Taxation of Corporate Shares—Statutes.—Ky. Stats., 1903, section 4085, provides that the property of all corporations, except as otherwise provided, shall be assessed to the corporation, and that so long as the corporation pays the taxes on all of its property the stockholders shall not be required to list their shares for taxation. Held, That under Constitution section 171, providing that all taxation shall be equal and uniform, section 4085 was applicable to foreign as well as domestic corporations.

4. Statutes—Construction.—Where a statute is susceptible of two constructions, one inequitable and unjust, as well as rendering the statute unconstitutional, and the other rendering the act valid and equitable, the latter construction will be applied.

5. Taxation—Foreign Corporations—Holding Companies—Shares of Stockholders.—A Kentucky railway company, desiring to increase its capital, procured the organization of a foreign corporation, with additional rights and powers, which, however, owned no property and exercised none of its powers, except to hold the stock of the railway company, for which the holding company's stock was exchanged according to a specified proportion; the only assets of the holding company being the stock in question, and the amount paid to it by the railway company to be disbursed to the holders of its stock as dividends. Though the nominal capital of the holding company exceeded that of the railway company, the only property represented was that owned by the railway company, on which full taxes were assessed and paid. Held, that the shares of the holding company were not subject to taxation, under Ky. Stats., 1903, section 4085, providing that, if the assets of a corporation are fully taxed and taxes paid by it, its shares shall not be taxable to the holders.

6. Same—Franchise—Right to be a Corporation.—A foreign corporation, organized merely to hold stock of another corporation, so long as it never acquired any property or engaged in any business, was not taxable; its "right to be" a corporation being of no taxable value.

7. Same—Removal of Causes.—A foreign corporation's right to remove actions against it to the federal court does not give to its snares a taxable value, under the rule forbidding the States to abridge rights guaranteed by the federal Constitution by a State tax.

8. Same—Capital Stock—Valuation.—Under Ky. Stats., 1903, section 4079, requiring the board of valuation and assessment to value the capital stock of railway companies for taxation, the board in its valuation must consider every element of property, tangible or intangible, owned by the company, together with the corporation's franchise and earning capacity; but the board, in making the valuation, is not governed by the property value of the railway company's shares.

9. Same—Revaluation.—Where all the property of a railway company was valued for taxation by the board of valuation and assessment for certain years, a revaluation for those years could not be made.

M. J. HOLT and B. F. WASHER for appellant.

HUMPHREY & HUMPHREY and L. R. YEAMAN for appellee. (No briefs—Record misplaced.)

OPINION OF THE COURT BY JUDGE LASSING— Affirming.

The question involved in this appeal is the right of the State, under existing laws, to tax the shares of the Louisville Traction Company in the hands of their owner. Proceedings were instituted in the Jefferson county court, under section 4241 of the Kentucky Statutes of 1903, to assess for the purpose of taxation in the hands of appellee certain shares of stock which he owned in the Louisville Traction Company as of September 15, 1903, September 1, 1904, and September 1, 1905. Appellee denied the right of the State to have said stock assessed on the ground that it was fully tax-paid. The county court having decided in favor of appellee, the Commonwealth appealed to the circuit court; and, the circuit court hav-

ing likewise ruled against the Commonwealth, it has appealed to this court.

It appears that appellee's stock was not issued until April 1, 1904, and that on September 15, 1903, appellee owned merely the right to have the stock issued to him at a later date; but, inasmuch as he owned the property which was surrendered up to the Louisville Traction Company in consideration for its issuing the shares in question, the case may be treated as though the shares of stock were on September 15, 1903, in actual existence. This brings us, then, to the consideration of the question: Was this stock of the Louisville Traction Company in the hands of appellee subject to taxation on September 15, 1903, September 1, 1904, and September 1, 1905? or was it tax-paid, and therefore not subject to further assessment and taxation under existing laws? In order to arrive at a proper determination of this question, it is necessary to go somewhat into the history of the organization and formation of the Louisville Traction Company.

Some time prior to the year 1903 all of the street railway lines in the city of Louisville were merged into one corporation, known as the "Louisville Railway Company." At that time, owing to the growth and development of the city of Louisville, it became necessary for the Louisville Railway Company to extend its lines and make certain betterments and improvements in its properties. In order to do this it either had to issue bonds or increase the issue of its stock and sell same for the purpose of raising the necessary money. It was deemed advisable at that time to raise $1,750,000 for the purposes which have been designated. The Louisville Railway Company had issued both preferred and common stock.

By reason of the growth of the city and the steadily growing business, the value of the common stock very much exceeded that of the preferred, and in 1903 the common stock was selling in the open market for about $175 per share. The company did not deem it wise to further increase its bonded indebtedness, and elected to raise the · desired money by issuing and selling common stock. A dispute arose between the holders of the preferred and the holders of the common stock as to who had the right to receive and pay for this common stock when issued; it being the contention of the common stock holders that, as the dividend on the preferred stock was guaranteed and secured to the preferred stock holders before any dividend could be paid on the common stock, they should have no voice in the sale of the common stock, and that the common stock holders alone should have the right to receive and pay for such common stock as was issued. To this proposition the preferred stock holders refused to agree. As a result of this disagreement it was finally determined that a ''holding company'' should be formed, and that this ''holding company'' should issue certificates of preferred and common stock, in exchange for the stock of the Louisville Railway Company, and that a fair and equitable adjustment of the differences existing between the preferred and the common stock holders would be to have the ''holding company'' issue one share of preferred stock in the ''holding company'' and one-fifth of a share of common stock in the ''holding company'' to the preferred share holders in the railway company in exchange for each share of preferred stock in the railway company, and to issue to the share holders of common stock in the railway company three shares of common stock of the ''holding company'' in ex-

Commonwealth v. Ledman.

change for one share of common stock in the railway
company and a "bonus" of $55; or, in other words,
each share of preferred stock in the railway company
was entitled to receive one share of preferred stock
and one-fifth of a share of common stock in the "hold-
ing company," and each share of common stock in
the railway company was, when surrendered up, to-
gether with $55 in cash, entitled to receive three
shares of common stock in the "holding company."
It was further agreed that, if any additional shares
of common stock became necessary, the preferred
stock holders, should have no voice in determining the
amount of stock that should be issued or the disposi-
tion that should be made thereof. Upon investigation
it was found that the laws of this State would not per-
mit of this discrimination against the preferred stock
holders in the conduct of the affairs of the company,
and it was therefore found necessary that the "hold-
ing company" should be incorporated in some State
where this provision of the agreement would not
be in conflict with the general laws. For this reason,
and for this reason only, the Louisville Traction
Company, which was organized for the sole purpose
of acting as a "holding company" for the share hold-
ers of the Louisville Railway Company, was organ-
ized under the laws of the State of New Jersey.

Notice of the plan agreed upon for the settlement
and adjustment of the differences between the com-
mon and preferred share holders was sent to each of
the stock holders of the Louisville Railway Company,
with the request that, if they approved of the plan of
settlement and adjustment and desired to participate
therein, they would deposit their stock at the place
designated by the officers of the Louisville Traction
Company, for the purpose of having the plan of ad-

justment carried into effect. That this proposed settlement was acceptable to the stock holders of the Louisville Railway Company is evidenced by the fact, that more than 99 per cent. of all of the stock of the Louisville Railway Company accepted the proposition and deposited its stock (the common stock holders paying the necessary amount of money), and all so doing were issued certificates of stock, according to the terms of the agreement, in the Louisville Traction Company, in exchange for their stock in the Louisville Railway Company. In order to perfect and carry out this arrangement, some considerable time was necessary, and between September, 1903, and April, 1904, the transfer was made. The stock of the Louisville Traction Company was not issued to holders of shares in the Louisville Railway Company until some time in April, 1904, although the shares were surrendered up by them along during the fall and winter of 1903 and 1904. During the formative period above referred to the traction company received large sums of money from the holders of common stock in the Louisville Railway Company under the terms of the agreement. This money was from time to time turned over by the Louisville Traction Company to the Louisville Railway Company, to be used for the purpose of making extensions and betterments. The record discloses that upon one assessment period there was a large sum of this money in the hands of the traction company. This, in another proceeding, the traction company was required to list and pay taxes on. On the other assessment periods covered by this litigation there was no fund in the hands of the Louisville Traction Company. All of the stock holders of the Louisville Railway Company not having accepted this proposition,

vol 127—39

it became necessary for the company to retain its corporate existence. This it has done, and annually, as required by law, the officers of the Louisville Railway Company have made out and filed the reports that the proper taxing authority, which is the board of valuation and assessment, desired, and it has at all times been amenable to the orders and directions of the board of valuation and assessment, in so far as furnishing any desired information relative to the conduct of its business is concerned. These reports, as made and furnished by the railway company, have been received by the board of valuation and assessment, and based upon them the property, including the tangible property, as well as the value of the franchise of the Louisville Railway Company, has been annually assessed and the taxes paid thereon by the Louisville Railway Company, as fixed and determined in said assessment.

There is no complaint on the part of the Commonwealth that any part of the tangible property of the Louisville Railway Company has escaped taxation, or that its franchise has not been fully and fairly valued for taxation. The contention of the Commonwealth is that inasmuch as the Louisville Traction Company is a foreign corporation, a separate and distinct organization, holding a charter giving it many rights and privileges which, if not now enjoying and exercising, it may later exercise and enjoy, and for which it pays to the State of New Jersey an annual license tax of $4,000 or more, therefore its stock cannot be said to be tax-paid because the Louisville Railway Company has been fully assesssed and its taxes paid. Stress is laid by the Commonwealth upon the fact that it cost something like $20,000, attorney's fee and other expenses, in order to organize and incorporate

the Louisville Traction Company under the laws of New Jersey, and that it pays annually to said State a license tax for the privilege of continuing in existence. We are unable to see wherein the payment of any sum of money, large or small, for the purpose of perfecting an organization or putting the company into legal shape to do business, can be regarded as a taxable asset in the hands of the company, or as giving to the company so organized any greater value than if its organization had been perfected without incurring any expense. The value of a franchise is not dependent in any sense upon the amount of money which is expended in creating it; but, on the other hand, we can readily see how the value of a franchise might be materially lessened because of the expenditure of a large sum of money in creating it, or in effecting its organization. Nor is the value of the franchise of the Louisville Traction Company in any wise enhanced because it is required to pay annually a license tax to the State of New Jersey for the purpose of continuing its corporate existence, any more than its value is enhanced by reason of its having to pay, under existing laws in this State, an annual license tax in order that it may continue to do business in this State. If the contention of the Commonwealth in this particular was sound, then the value of the franchise would be increased in proportion to the amount of the license tax—the larger the license tax, the greater the value of the franchise; but, on the contrary, we are rather inclined to the opinion that the converse of this proposition would more nearly represent the correct theory.

The contention of appellant that these shares should be taxed because the traction company is a foreign corporation is not well taken. Section 4085

of the Kentucky Statutes of 1903 applies alike to all corporations, and it is immaterial where the corporation is organized; the sole question being, where is its property? If all of the property of the corporation is in Kentucky, and has been taxed in Kentucky, then its shares of stock ought not again to be taxed, no matter where the corporation is incorporated. The State is not interested in the question of organization; but its aim is to reach and tax the property of every description owned by the corporation, and if this has been done the ends of the law have been fully met and the purpose of the statute satisfied. This particular point in the construction of this statute has never been passed upon by this court; but in Michigan and Ohio, with a similar provision in their tax laws to section 4085 of our statute, it has been held that, where the property of a foreign corporation is in the State and taxed, the shares of stock in such corporation are not subject to further assessment and taxation, any more than they would be if the corporation in question were domestic, instead of foreign. Stroh v. Detroit, 131 Mich. 109, 90 N. W. 1029, and Hubbard v. Brush, 61 Ohio St. 252, 55 N. E. 829. The Constitution (section 171) provides that all taxation shall be equal and uniform, and the Legislature, in enacting section 4085 of the statute, must have intended that it should apply alike to foreign and domestic corporations where all of their property is in this State; otherwise, not only the spirit but the very letter of the Constitution would be violated thereby, and the purpose and aim of the lawmaking power, as construed by this court, to avoid double taxation, would in many instances be defeated. It is a uniform rule of construction of this court that, where there is a doubt as to the meaning of a statute,

that construction is placed upon it which will make it nearest conform to the fundamental laws as expressed in the provisions of the Constitution, and, where one construction will tend to work a hardship and another construction to relieve an inequitable and unjust burden, the latter construction is invariably given. Where one construction would produce double taxation, and another avoid it, the latter is applied. Livingston v. Paducah, 80 Ky. 656, 4 Ky. Law Rep. 171; Aetna Life Insurance Company v. Coulter, 115 Ky. 787, 25 Ky. Law Rep. 193, 74 S. W. 1050; Cumberland Telephone & Telegraph Company v. Hopkins, 90 S. W. 594, 28 Ky. Law Rep. 846; Commonwealth v. Bank of Commerce, 118 Ky. 547, 26 Ky. Law Rep. 407, 81 S. W. 679. This same rule of construction has been adopted with a degree of uniformity throughout the several States; hence it follows that the only fair construction to place upon section 4085 of our statute is that which conforms nearest to the requirements of the Constitution and will produce equity and equality in the burden of taxation, to-wit, that it applies alike to foreign and domestic corporations, where all of their property is in the State of Kentucky.

This being true, we come next to address our attention to the question as to whether or not all of the property of the Louisville Traction Company is in fact in Kentucky, and whether or not all of the property it has in Kentucky is the property of the Louisville Railway Company? The tendency of courts in recent years is to look to the substance, rather than to the forms, of transactions, as is aptly illustrated by the rulings of the court in the cases of Northern Securities Company v. United States, 193 U. S. 301, 24 Sup. Ct. 436, 48 L. Ed. 679, State v. St. Paul Depot Company, 156 Pa. 488, 26 Atl. 1071. For the purpose

of taxation the State is not interested in the question as to whether or not the shares are held by an individual for himself, or by some one else as representative, agent, trustee, depositary, custodian, or holder. Nor can it make any difference for the purposes of taxation that a corporation, which is but an artificial person, holds this stock in a fiduciary capacity, instead of an individual. Neither the character nor the value of the property is changed because it is held by a trustee or agent, whether that trustee or agent be a natural or an artificial person. Nor can it affect the value of the property that the trustee holding same should be designated a "holding company." It is immaterial, so far as the State is concerned, that the property of the Louisville Railway Company is split up or divided into legal and equitable shares or estates. More than 99 per cent. of all of the stock of the Louisville Railway Company is held by the traction company, under an agreement entered into between the share holders representing this amount of stock in the Louisville Railway Company. The remaining fraction of 1 per cent. of the stock of the Louisville Railway Company is still in the hands of its original owners. Can it be said that this 99 and a fraction per cent. of the stock of the railway company has an increased value because of the fact that it is held by the Louisville Traction Company, as trustee or agent for the original holders? Can it be successfully contended that, because it is so held, it should bear a burden of taxation greater than that portion of the stock which is in the hands of the original owners and not in the hands of the trustees? We think not. The fact that it has been deposited with the "holding company," and that this "holding company" has issued trustee's certificates, as it were, in

lieu of the original stock, does not warrant the imposition upon the property represented by this original stock of any additional burden of taxation.

But the contention of the Commonwealth is that these shares are issued by the Louisville Traction Company, and the Louisville Traction Company is a separate and distinct corporation, with many charter rights and privileges, and for this reason the shares which it has issued should be made to bear a part of the burden of taxation. This contention would be entirely right and proper, since the traction company has not reported and paid upon its franchise, as provided by section 4088 of the Kentucky Statutes of 1903, if it were shown that the Louisville Traction Company had any property whatever anywhere, other than that represented by the shares of stock of the Louisville Railway Company, which it had deposited with it and for which it issued its shares of stock in exchange. Likewise the contention of the Commonwealth would be true if the Louisville Traction Company were exercising any of the rights and privileges which its charter empowers it to exercise, other than acting as a "holding company" for the stock of the Louisville Railway Company. It has these rights and privileges, just as any other trustee has rights and privileges which he might exercise; but it cannot be contended that, because a trustee might exercise other rights and privileges, therefore the trust fund in his hands has a greater value than it would otherwise have. The "right to be" is not a subject of taxation under either the laws of this State or the laws of New Jersey. The "right to be" is not an item of property at all. Under the laws of New Jersey three persons may form a corporation, just as under section 538 of the Kentucky Statutes of 1903 three per-

sons may organize for the purpose of forming a corporation for general purposes, or as under section 673 any seven persons may form a corporation to construct a railroad. But we do not understand that the mere formation of a corporation under our laws creates property which is subject to taxation. If a corporation was formed with a capital stock of $1,000,000, all that the State would require would be that the expenses provided for by statute in the way of organization tax or fee should be paid. Such corporation, merely upon complying with the requirements of the statute and the payment of the incorporation tax, would have the right to do business—in other words, the "right to be," to "exist;" but this "right to be" would not be an element of property that could be taxed. It might exist for any number of years; but, if it never acquired any property or engaged in any business, its "right to be" would have no taxable value. It would have no cash value, and no assessment value. A corporation so formed would likewise have a right to transact business; but until it acquired property or actually transacted some business it would have absolutely no value, and hence would not be a subject of taxation. As said in the case of Cumberland Telephone & Telegraph Company v. Hopkins, 90 S. W. 594, 28 Ky. Law Rep. 846, in speaking of the value of a corporate franchise: "The value will depend largely upon its money-earning capacity as it may be employed, and depends at last upon its being exercised." Nor can its "right to be" ever become an element of property that is subject to taxation. Its "right to be" can merely authorize or give it the "right to do," and, whenever this "right to do" is exercised or utilized by acquiring property or engaging in business, then that property

or that business would be subject to taxation, and the amount of that taxation would depend altogether upon the value of the property acquired or the amount of business done. So long as the traction company, therefore, owns no property, other than the stock of the Louisville Railway Company, which has been placed in its hands under the terms of the agreement entered into between the stock-holders of the Louisville Railway Company participating in that agreement, and is engaged in no business other than the holding of those shares and the paying over to those holding its certificates, representing those shares, such dividends as are from time to time apportioned to it, its shares are exempt from taxation, because the entire property which they represent is fully tax-paid, and therefore, by virtue of sections 4085 and 4088 of the Kentucky Statutes of 1903, it is relieved from paying the taxes a second time.

It is also insisted for the Commonwealth that the Louisville Traction Company, being a foreign corporation, when questions of dispute arose between it and citizens of Kentucky, would have a right to have that question transferred to and determined in the United States court, and that this right gives to its shares a value which should be taxed. No authority is cited to sustain this contention, nor do we believe that any can be found. This is a right which is guaranteed to a citizen by the federal Constitution. It has no taxable value, and, should the State attempt to put a value upon this right to abridge it in any way, it would be a violation of the federal Constitution. It is a well-settled principle that no right which is guaranteed by the federal Constitution can be abridged, or burdened, or incumbered by a State tax. However, since the record in the case before us shows

that the traction company is engaged in no business whatever, other than paying over the dividends which it receives from the railway company to its stock holders, it is not the subject of litigation which could be removed to the federal court. It does not operate the railway company, could not be sued for damages, and any liability for personal injury must be brought against the Louisville Railway Company; and the Louisville Railway Company, being a Kentucky corporation, could not remove its cases to the federal court, but must try them in the State courts, just as it would if the "holding company" had never been formed.

We come next to consider the only remaining question in the case, and that is the contention of the Commonwealth that the difference in capitalization between the Louisville Railway Company and the Louisville Traction Company should be assessed. The Louisville Railway Company has 25,000 shares of preferred stock and 46,000 shares of common stock, each of the par value of $100 per share, making a total of $7,100,000 par value. The traction company has 25,000 shares of preferred stock, and 110,000 shares of common stock, each of the par value of $100 per share, making a total capitalization of $13,-500,000 par value. There is a difference, therefore, in the par value of the capitals of these two companies of $6,400,000; and yet these capitalizations are based upon the same identical property, the tangible property of the Louisville Railway Company, to which must be added the value of its franchise. The excess, then, of the aggregate of the par value of the traction company over the aggregate par value of the railway company cannot represent actual property. The par value of a share of the stock of a corpora-

tion has no necessary relation to the actual value of such stock. For instance, two corporations may be engaged in the same business, owning similar plants and stocks of raw material of exactly the same value. The business of the corporations may be exactly the same in extent and value. The taxable value of the corporations would be precisely the same. Yet, if one had twice as many shares of stock as the other, the market value of the one would necessarily be double that of the other. For the purposes of taxation we look, not to the par value, but to the actual value, of the shares. In order to throw light upon the actual value, many items are taken into consideration, of which the par value of the shares is but one. The earning capacity, as represented by the net profits after taking the operating expenses from the gross receipts, is a far more potent factor in determining the taxable value of the shares of a corporation than is the par value. The question to which the taxing authority must address its inquiry is: What property gives value to the stock of the Louisville Traction Company? The record shows that the stock of the Louisville Railway Company is the only property owned by the Louisville Traction Company, and hence this stock alone gives value to the shares of the Louisville Traction Company. The difference in par value between the stocks of the two companies can furnish no aid in arriving at a determination as to what is the true taxable value of the Louisville Traction Company. While it is true that the capitalized value of the Louisville Railway Company is much less than that of the Louisville Traction Company, yet as a matter of fact the market value of the two stocks at the time of the organization of the "holding company" furnishes a most apt illustration of the

fact that, although capitalized at a much larger sum, the Louisville Traction Company stock is in fact worth no more in the aggregate than is the stock of the Louisville Railway Company; for we find that at the time the "holding company" was organized the common stock of the Louisville Railway Company had a market value of about $175 per share, and for each share of common stock in the railway company, plus $55, the holder received three shares of common stock in the traction company. Hence, each share holder contributed $230 for every three shares of stock in the traction company which he received, and the market value of the common stock of the traction company was $75 per share. Hence each share of common stock in the railway company, plus $55, was actually worth its equivalent of three shares in the traction company, as shown by the value of each stock in the open market.

The total assessment of the railway company, as fixed by the board of valuation and assessment in 1904, was $8,500,000. It is not contended that any property of the Louisville Railway Company was omitted by the board in the assessment as of September 15, 1903, or in its assessment as of September 1, 1904, or that there was any substantial change in conditions during this time. On September 1, 1905, the value of the traction company's stock had increased, and on said date the board of valuation and assessment raised the assessment of the railway company from $8,500,000 to $9,500,000. Whether this increase in valuation was due to the increase in the market price of the traction stock or to an increase in the net earnings of the railway company, the record does not disclose; but, as it is a well-known fact that the market value of all stocks is more or less

influenced by conditions and circumstances which
have no direct bearing upon the actual value of the
stock, it is not unlikely that this increase was due to
the showing made in the report filed by the Louisville
Railway Company that its net income had been
greater the year just passed than it had during the
preceding year. The only income of the traction com-
pany was the money which it received from the rail-
way company for dividend purposes, so that, had the
traction company reported, it could have given the
board of valuation and assessment no information on
the question of income which had not already been
supplied in the report made by the railway company.
This record shows that the Louisville Railway Com-
pany paid in dividends for the preceding year $342,-
083.33.   It is alleged that this sum was the total in-
come of the traction company; and this is not denied,
for the reason, we presume, that it could not be.
Under section 4079 of the Kentucky Statutes of 1903
the duty of the board of valuation and assessment
was to value the capital stock of the railway com-
pany, and in order to do this it had to take into con-
sideration in its valuation, every element of property,
tangible or intangible, owned by that company.   In
fixing this valuation the board is not governed by the
property value of the railway company's shares (as
decided in Henderson Bridge Company v. Common-
wealth, 99 Ky. 623, 17 Ky. Law Rep. 389, 31 S. W.
486, 29 L. R. A. 73) ; but it must take into considera-
tion its franchise, its earning capacity, and its assets
of every description.   From the report, as filed by
the company, and such other information as it may
possess, it assesses the property at a fair valuation,
and when once so assessed the action of the board is
final and conclusive, and no further action can be

taken looking to a further assessment or revaluation
of the property. Coulter v. Louisville Bridge Com-
pany, 114 Ky. 42, 24 Ky. Law Rep. 809, 70 S.
W. 29. In the present case, the board having acted
and valued this property as of September 1, 1904, and
again as of September 1, 1905, and the record in this
case showing that the property so valued by the board
is all, and in fact the identical, property which was
represented by the stock of the Louisville Traction
Company on those dates, no further assessment or
revaluation can be made thereof; and yet that is what
the effort of the Commonwealth amounts to.

If it was shown that there was any property, tangi-
ble or intangible, belonging to the traction company,
other than its shares of stock in the Louisville Rail-
way Company, then the Louisville Traction Company
should be required to pay taxes upon such property.
There is no such showing made in this case. It is
the policy of the law that all property of whatever
kind or description should bear its just proportion
of the public burden of taxation; that it should be
taxed once, and no more, during the same taxing
period; and, where it is shown that the actual prop-
erty which is here sought to be taxed has been
assessed and the taxes paid thereon by the Louisville
Railway Company, then this same property, though
represented by the certificates of the Louisville Trac-
tion Company, is not subject to further taxation in
the hands of the share holders. It will be observed
that these owners and holders of stock in the Louis-
ville Railway Company, who entered into the contract
out of which the "holding company" grew or was
created, surrendered up their shares of stock in the
railway company and received in lieu thereof certifi-
cates of stock in the Louisville Traction Company.

These certificates of stock in the Louisville Traction Company are but the representatives of the original stock which they held in the Louisville Railway Company, and are no more subject to taxation in the hands of their owners than the shares of the Louisville Railway Company were in the hands of their owners, prior to the organization of the "holding company."

For the reasons given, the judgment is affirmed.