Richardson, Tax Collector v. State National Bank.

CASE 92.—SUIT FOR INJUNCTION BY THE STATE NATIONAL BANK AGAINST D. P. RICHARDSON, CITY TAX COLLECTOR, OF FRANKFORT.—December 14, 1909.

# Richardson Tax Collector v. State National Bank

Appeal from Franklin Circuit Court.

R. L. STOUT, Circuit Judge.

From a judgment granting the injunction, defendant appeals.—Reversed.

1. Taxation—Local Assessments—Bank Stock.—Prior to 1906, the tax assessment of national banks for local purposes was made by the state board, and the tax collected on their certificate of the amount of the assessment. Act March 15, 1906 (Laws 1906, p. 136, c. 22, art. 4, subd. 2), providing for taxing shares of banks and trust companies, took local taxes out of the jurisdiction of the state board, and required the assessment for local taxes to be made by the local "assessing officer." The Court of Appeals in November, 1907, held that the state board was required to make an assessment for the year 1906, for state purposes under the act of March 15, 1906, even though an assessment had been made under the prior law. Held, that the local "assessing officer" was required to make a similar assessment for local purposes; it being manifest that the Legislature did not intend when changing the officer who was to make the local assessment to require an assessment for state purposes for 1906, and to omit from assessment for local purposes shares of bank stock for that year.

2. Taxation—Local Assessment of Bank Stock—Duties of Assessing Officer.—Though the local assessor could not assess shares of stock in a national bank previous to the time Act March 15, 1906, took effect for previous to that time he had no such authority and though he was required by previous statutes to return his book, and the assessment was completed before the act took effect, the Legislature which had imposed upon him these duties could impose others upon him, and did so by providing for a local assessment of the shares of bank stock for local purposes.

3. Taxation—Retrospective Assessment of Property.—The state may provide for the retrospective assessment of property for taxation.

4. Taxation—Local Assessment of Bank Stock—Ordinances—Construction of Statute.—Ky. St. Sec. 3403 (Russell's St. Sec. 1467), provides that where any property has not heretofore been assessed for taxation, or has been improperly assessed, or where notice of the time and place of the meeting of the board of supervisors of tax has not heretofore been properly or regularly given, cities of the third class can pass an ordinance directing the assessment· of such property, etc., and that its object is to insure the collection of any unpaid taxes, and that the provisions shall not extend back for more than five years. Act March 15, 1906, provided for the taxing of shares of banks and trust companies at the same rate as for other personalty, which was to ·be assessed by a local assessing officer. Held, that, where the local assessing officer had not made an assessment of the shares of stock of a bank for 1906, the council had authority under section 3403 to provide for its assessment, as that section applied to all cases "where property has not been assessed for taxation"; the word "heretofore" being required to be read as referring to the time of the passing of the ordinance, and the five years allowed being counted, not from the time of the passage of the act, but from the time the assessment is made.

WM. CROMWELL for appellant.

HELM & HELM for appellee.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

The State National Bank brought this suit to enjoin the city of Frankfort from assessing its shares of stock for taxation for city purposes for the year 1906 under Acts 1906, p. 134, c. 22; it being alleged in the petition that a special board of supervisors had been appointed under an ordinance of the city council, and were about to assess the property. The city filed an answer, in which it was alleged that no assessments of the shares had been made for city purposes for the year 1906, and that no tax had been paid thereon, ad-

mitting that it was the intention of the board to assess the shares of stock without deducting therefrom the value of the United States bonds held by the bank. The plaintiff demurred to the answer, the court sustained the demurrer, and, the city failing to plead further, a judgment was entered granting an injunction as prayed in the petition. The city appeals.

Section 3403, Ky. St. (Russell's St. Sec. 1467), which is part of the act governing cities of the third class to which Frankfort belongs, among other things provides as follows: ''Where any property has not heretofore been assessed for taxation or where same has been irregularly or improperly assessed, or where notice of the time and place of the meeting of the board of supervisors of tax has not heretofore been properly or regularly given, said city is authorized to pass an ordinance directing the assessment of such property and making correction in any assessment irregularly or improperly made, and giving notice of the place and time of the meeting of any board of tax supervisors, so that any taxpayer may appear before same. The object of this section is to insure the collection of any unpaid taxes, and for that purpose any of the said cities may, if it deems it necessary, appoint a special board of tax supervisors, whose duty it shall be to assess for taxation any omitted property or to correct any improper or irregular assessments, or to hear any complaints as to the assessment or value of any property upon which the taxes have not been paid. When any property is assessed or any assessment corrected, or where any taxpayer has the opportunity of being heard for previous years, the tax rate and levies and liens for such years shall apply and the provisions of this section shall not extend back for more than five years.'' The ordinance

passed by the council was enacted pursuant to this section. The proceedings by the city were regular. The first question in the case is: Was the defendant liable to the tax? For it is admitted that the property has not been assessed and the tax has not been paid.

The act of 1904, providing for the taxation of the shares of national banks, required them to make certain reports on the 1st day of March, and to pay the taxes on the 1st day of July. The provision of the act as to the assessment of the shares is as follows: "The Auditor, Treasurer, and Secretary of State are hereby constituted a board of assessment for the purpose of fixing the value of shares of all national banks in this state. It shall be the duty of the Auditor, immediately after the board of assessment has fixed the value of the shares of national banks to furnish each bank with a statement of the value fixed on its shares and the amount of tax due thereon, and the bank shall have thirty days from the time of receiving the notice to go before the board, and ask for a change in the valuation, and the board, after hearing such evidence as may be submitted, may change the valuation and assessment as it may deem proper, and the action of the board shall be final. Each bank shall be entitled to have deducted from the total valuation placed on its shares by said board, the assessed value of its real estate in this state. It shall be the duty of the national banks to list with the county assessor of each county its real estate, and pay the taxes thereon to the sheriff. The Auditor shall at the expiration of thirty days after final action by said board, certify to the county clerks of said counties where national banks are located, the value of the shares of the bank, less the assessed value of its real estate, and such

certificates shall be by each county clerk filed in his office and be by him certified to the proper collecting officer of the county, city, town or taxing district, for collection, and each county, city, town or taxing district shall be entitled to collect taxes on such valuation, except in such cities and towns as otherwise provided.'' Acts 1904, p. 146, c. 66. This act only applied to national banks. It did not apply to state banks. Under the act, the assessment was made for city taxes in Frankfort, not by a local assessor, but by the state board, and the tax was collected by the city on the assessment as certified by that board.

Under this act it was held in Marion Nat. Bank v. Burton, 121 Ky. 876, 90 S. W. 944, 28 Ky. Law Rep. 864, 10 L. R. A. (N. S.) 947, that national banks were entitled to a deduction of their United States bonds for the reason that the state banks which were assessed under a different statute were entitled to the deduction, and that, under the act of Congress, the national banks must be placed on the same footing as the state banks. This ruling applied to all taxes, both state and local. That opinion was delivered on January 31, 1906. The Legislature was then in session, and, to remedy this evil, it enacted the act of 1906, which placed state banks and trust companies on the same footing as national banks, and required their shares of stock and the shares of stock in national banks all to be assessed in precisely the same manner. There had, in fact, been no discrimination under the previous act, but it was the possibility of a discrimination that required the court to hold that under the act of 1904 national banks were entitled to a deduction of their United States bonds. The act of 1906, after providing that the state board should assess shares of stock of all banks and trust com-

panies, contained this provision as to the assessment
for local taxation: "Every state bank and trust com-
pany incorporated under the laws of this common-
wealth, and every national bank doing business there-
in and located in any county, city, town or taxing dis-
trict in this commonwealth shall make to the assessing
officer of the county, city, town, or taxing district a
report similar to that required by this sub-division
to be made to the state board of valuation and assess-
ment for assessment for state purposes.

The assessing officer of the county, city, town, or
taxing district wherein any trust company, state and
national bank is situate, shall assess the shares of
such trust company, state and national bank for taxa-
tion for county, city, town and taxing district pur-
poses in the manner prescribed in this subdivision for
assessing the same by the state board of valuation
and assessment for taxation for state purposes, and
such officer shall make out and return the assessment
to the proper authorities of the county, city, town or
taxing district, at the same time and manner as pre-
scribed by law for the return of the assessment of
personal property therein. In assessing the shares
of banks for county purposes the assessor shall make
the return upon a separate blank and shall not be in-
cluded in the recapitulation sheet made by the county
clerk and furnished to the Auditor, but shall be re-
turned to the county board of supervisors. The
equalization, collection, penalties and all laws relat-
ing thereto, now provided by law for other personal
property in the county, city, town or taxing district,
shall apply in like manner to the collection of the
taxes herein provided for; any county, city, town or
taxing district, not now having the right to collect
such taxes by suit, is hereby authorized and empow-
ered so to do." See Acts 1906, p. 136, c. 22.

The act also contained these provisions: "All laws or parts of laws in conflict or inconsistent with this act, providing for other methods of taxation of shares of national banks, or the taxation of trust companies and state banks, incorporated under the laws of this commonwealth, and the collection of taxes thereon, are hereby repealed. All national banks, trust companies and state banks shall file with the Auditor their reports herein provided for on or before the 15th day of April, 1906, and annually thereafter on or before March the first. Said reports shall be made up to and including the first day of the preceding September."

The act contained no emergency clause. It was approved March 15, 1906, and so took effect 90 days after the adjournment of the Legislature. The last clause of the act is in these words: "If any section in this bill shall be held to be unconstitutional, that fact shall not affect any other section of the act, it being the intention of the General Assembly in enacting this bill to enact each section separately, and if any proviso or exception contained in any section of this bill shall be declared unconstitutional, that fact shall not affect the remaining portion of said section; it being the intention of the Legislature to enact each section of said bill and each proviso and exception thereto separately." In Hager v. Citizens' National Bank, 127 Ky. 192, 105 S. W. 403, 914, 32 Ky. Law Rep. 95, the act was held valid by this court and applicable to state taxes for the year 1906; that is to say, it was held that the state taxes for the year 1906 should be assessed and collected under this act, and that the national banks as to their state taxes were not entitled to a deduction for that year of the value of the United States bonds held by them, but the

question as to their right to the deduction as to local taxes was not there before the court, and was not passed on.    That question is presented on this appeal.

In point of fact the state board of valuation had not allowed to any state bank a deduction on acount of United States bonds held by it previous to the act of 1906.    The state banks were in fact discriminated against under the decision in Marion National Bank v. Burton; for the national banks when given the deduction of their United States bonds as followed under that decision were placed in a more favorable position than the state banks enjoyed, and they were thus given an immunity from taxation which the Legislature had not intended to allow.    The result was that the Legislature undertook to remedy the evil by the act of 1906, and to this end the provisions of that act as to the returns for the year 1906 were inserted. The court in Hager v. Citizens' National Bank held that, if the state board had made an assessment before the act of 1906 took effect, it would have been its duty to make another assessment after that act took effect. The court said: "If it had not been intended that the taxes for 1906 were to be assessed under the act, there was no need for a special repealing clause in this subdivision; and the sixth clause must otherwise be rejected as meaningless. It is true that the act did not take effect until June 11th, but the Legislature plainly intended that the assessment should be made under it, and it was done. Even if an assessment for 1906 had been made before the Legislature met, it should have directed another assessment to be made and the taxes to be paid under it. And so, if the board had made an assessment under the act of 1904, it would have been its duty after June 11, 1906, to have made

an assessment under the act of 1906, and the taxes should have been paid under that assessment.''

There was the same necessity for this legislation as to local taxes as there was to state taxes. The Legislature endeavored to correct an imperfection in the existing law, and the correction would have been imperfect if it had not applied to the year 1906; for there was the same necessity for a remedy as to the taxes for the year 1906 as there was for the taxes of the subsequent years. Under the previous act, the assessment for local purposes was made by the state board, and the taxes were collected on their certificate of the amount of the assessment. The act of 1906 took local taxes out of their jurisdiction and required the assessment for local taxes to be made by the local ''assessing officer.'' If, as has been held, the state board was required to make an assessment for the year 1906 for state purposes, it must follow that the local ''assessing officer'' was also required to make a similar assessment for local purposes; for the Legislature manifestly did not intend when it simply changed the officer who was to make the assessment to require the assessment to be made for state purposes for 1906, and to omit from assessment for local purposes the shares of stock for that year. The two assessments are provided for in the same act, in the same connection, and manifestly for the same purpose, the local assessment for local purposes being merely substituted for an assessment by the state board as under the former law. The local assessor could not have assessed the shares of stock in a national bank previous to the time the act of 1906 took effect; for, until that act took effect, he had no authority to make an assessment of such shares of stock for any purpose. It is true that by the previous sta-

tutes he was to return his book, and the assessment was completed long before the act of 1906 took effect; but this was all by statute, and the Legislature which had imposed upon him these duties could impose upon him other duties, and this it manifestly intended to do by that part of the act of 1906 which provides for a local assessment of the shares of stock for local purposes.

It is true that the taxes are levied under the statute as of date January 1st; but, while this is true, the assessment may be made after January 1st, the value of the property to be fixed as of the date when the assessment should have been made.  The state may provide for the retrospective assessment of property. In this case no assessment of the property had been made for 1906, and none could be made; for, as held by this court, it was the duty of the state board to proceed under the act of 1906, and under that act they had no jurisdiction to make an assessment for local purposes.    When it is settled, as held in Hager v. Citizens' National Bank, that, if the state board had made an assessment for state purposes before the act of 1906 took effect, it would have been its duty, after that act took effect to make an assessment as provided thereby, it must follow, that, if the state board had made an assessment for local purposes before the act of 1906 took effect, it would have been the duty of the local "assessing officer" after that act took effect in like manner to make an assessment pursuant to it; for the act of the state board as to the assessment for the state and for local purposes stands on the  same plane, and the Legislature had the same power to require a new assessment in one case as in the other. The act of 1906 shows clearly that the state board was not to make local assessments under it,

and as no other officer but it could assess these shares before it took effect, when this jurisdiction was taken from it, and transferred to the local "assessing officer," the manifest meaning was that he was to make the assessment which under the former law the board was to make. The mere change of officers was not intended to exempt the banks from taxation.

We also conclude that, when the local "assessing officer" had not made an assessment of the shares of stock of the State National Bank, the council was authorized by section 3403, Ky. St., above quoted, to provide for its assessment; for it was property subject to assessment, and which had not been assessed for taxation. The operation of this section is not confined to property which has been omitted from assessment by the assessor; but it applies in all cases "where any property has not heretofore been assessed for taxation." When we read the whole section, it is evident that the word "heretofore" is to be read as referring to the time of the passing of the ordinance. The act creates the board of supervisors of tax, and this section provides for the correction of their work; its object is "to insure the collection of any unpaid taxes;" and the five years allowed by the last clause are to be counted, not from the passage of the act, but from the time the assessment is made. Aside from section 3403, the powers granted the common council of third-class cities are fully as broad as those granted towns of the fifth class. Compare Ky. St. sections 3265, 3289, subsecs. 1, 12, 3281, 3637, and 3644 (sections 1282, 1306, 1298, 1643, 1650, and 1682). In Muir v. Bardstown, 120 Ky. 739, 87 S. W. 1096, 27 Ky. Law Rep. 1150, we sustained an ordinance under the latter sections providing for the assessment of property that had escaped taxation.

Judgment reversed, and cause remanded for further proceedings consistent herewith.

BARKER, J., dissenting.

Dissenting opinion by Judge Barker.

I am unable to concur in the opinion of the court. If my only reasons for dissenting were those given in the dissenting opinion of Hager v. Citizens' National Bank, 127 Ky. 192, 105 S. W. 403, I should not feel impelled now to dissent, but there are other and vital reasons why I cannot concur in the opinion, which I will state as briefly as I can. The opinion holds that the decision in that case is conclusive, or, at least, that there is no substantial difference between the two cases; and this idea runs through the whole opinion. The two cases are essentially different.

1. In that case the assessment involved was the assessment for the current year. In this case the assessment sought to be made in 1908, for the taxes of 1906, is necessarily a retrospective assessment, governed by different principles, as I shall presently show.

2. In that case the court held that there was no particular time named within which the assessment should be made, it might be made at any time during the current fiscal year. In this case, as the only assessment for local purposes required by the act must be made "at the same time and manner as prescribed by law for the return of the assessment of personal property therein," and as it is conceded in the opinion of the court that the time for the assessment of the tax of 1906 for the purposes of cities of the third class (to which Frankfort belongs) had expired "long before the act of 1906 took effect," the two cases

differ materially in that respect, and it is an important difference.

3. In that case, as the time for the assessment for the current year had not expired, the court thought that the act of 1906 could be made to apply as a remedial statute, without giving it a retroactive operation. In this, as the time has expired, it is necessary to give the act of 1906 a retroactive effect, and the court does so in the opinion, in which I think the court errs vitally, and I shall presently review the authorities on that question, particularly the decisions of the Supreme Court, since that is the court of final resort on the question of the right to deduct United States bonds, as well as the question whether the tax rests upon assets or upon shares of stock.

The difference between the cases of an assessment for the current year and a retrospective assessment is that in the former it is the duty of the officers who by the law are charged primarily with the duty of assessing to assess during the current year, and if the law under which their power to assess for the year should be repealed during the current year, and another substituted, which is remedial in nature, then there is much force in the argument that the authority entitled to receive the tax should not be allowed to suffer by the failure to assess before the repeal, and that now, there being no law in force under which there could be an assessment, except the substituted or remedial statute, the assessment should be made under the latter. This I understand to have been the position of the court in the Hager Case. But, on the other hand, it is well settled by the decisions of this court that a retrospective assessment must be made under the law as it existed as of the time to which the assessment related, which in this instance

is January 10, 1906, when the act of 1904 was in force.

Again, a retrospective assessment has as its neces-
sary basis the failure to assess by the officers primar-
ily charged with the duty; and since the purpose of
the law is to supply or correct that failure, it would
seem to follow that the person authorized to per-
form the omitted duty should be governed by the law
which would have governed the actions of the officers
primarily charged with the duty if they had not
omitted to perform it; and that is the result of the
previous decision.   If that principle should be ap-
plied to this case, the resultant effect would necessar-
ily be an affirmance of the judgement, because it is
demonstrable, as well as admitted in the opinion, that
"the exclusive right to assess was in the board of
valuation and assessment until the act of 1906 became
effective July 11, 1906."   The act of 1906 took the
power of assessing for local purposes from the board,
and put it in the hands of the local assessors.   There-
fore the failure of the state board, which possessed
the exclusive power to assess for local purposes from
March 1, 1906, until July 11, 1906, when the act of
1906 became effective, must necessarily have been un-
der the act of 1904, and therefore, the substituted
duty should be performed under the same act; and it
is conceded that, if the act of 1906 does not apply,
there was the right, in the appellee, under the prior
decisions of this court, to have had deducted from
the aggregate value of the shares the value of the
United States bonds held by it, which, if allowed,
would necessarily have resulted in an affirmance of
the judgment, because it is conceded of record that
the total book value of the shares at the date the as-
sessment should have been made, as well as when it

vol. 135—50

was attempted to make it, was $190,870; that of that
amount $15,000 was represented in tangible property,
upon which the taxes for all purposes had been paid,
leaving a balance of book value of shares at $175,870,
whereas, the face value of the United States bonds
held by the appellee from January, 1906, continuous-
ly to the present time, is $187,600. There is nothing
in this record which justified the court in saying: "In
point of fact the state board of valuation and assess-
ment had not allowed to any state bank a deduction on
account of United States bonds held by it previous to
the act of 1906." The record has absolutely nothing
in it on that subject.

The statement that "the state banks were discrim-
inated against under the decision in Marion National
Bank v. Burton" is certainly opposed to the decision
of that case, which proceeded upon the opposite the-
ory; and the statement "that national banks were
thus given an immunity from taxation which the Leg-
islature had not intended to allow" is equally opposed
to the Burton Case, because it became the duty of the
court in that case, in construing the statute, to declare
the intention of the Legislature, and it declared that
the Legislature did intend that the deduction should
be made. The court further says in the opinion:
"The court in Hager v. Citizens' National Bank held
that, if the state board had made an assessment be-
fore the act of 1906, it would have been its duty to
make another assessment after the act took effect"—
and then proceeding, as I think and shall presently
show, from the erroneous premises, the court further
says: "When it is settled, as held in Hager v. Citi-
zens' National Bank, that if the state board had made
an assessment for state purposes before the act of
1906 took effect, it would have been its duty, after

that act took effect, to make an assessment as provided thereby, it must follow that, if the state board had made an assessment for local purposes before the act of 1906 took effect, it would have been the duty of the local assessing officers, after the act took effect, in like manner to make an assessment pursuant to it.'' This last statement, based on the first, which in its turn is based, as I think, on an erroneous conception of the effect of the decision in the Hager Case, is very radical and in distinct opposition to at least five other cases, decided by this court, three of which have been reported, and another (decided last June) has been marked for publication. Two of these opinions were rendered by Judge O'Rear, two by Judge Hobson, and one by Judge Lassing.

I think the first statement quoted as to the effect of the decision in the Hager Case must have come from a somewhat hasty reading of the opinion in that case, which was rendered by Judge Carroll. What was really said in the Hager Case was this: ''Even if the assessment for 1906 had been made before the Legislature met, it could have directed another assessment to be made, and the tax to be paid under it. And so if the board had made an assessment under the act of 1904, it would have been its duty after June 11, 1906, to make an assessment under the act of 1906, and the tax should have been paid under that assessment.'' This, I take it, must mean that it would have been the duty of the board, if the Legislature had so directed, to have made another assessment, and the constitutional right of the Legislature to have so ordered may, for the purpose of the argument, be conceded. If it was intended in the opinion to say that the board of its own power, without the special legislative authority referred to, could have made an-

other assessment after a final assessment, already
made and completed, by the lapse of 30 days, without
any complaint of the taxpayer, then the court has
overruled at least five well-considered cases, without
dignifying them by the slightest mention.

The first of these is that of Coulter v. Louisville
Bridge Company, 114 Ky. 47, 70 S. W. 29, 24 Ky.
Law Rep. 809. In that case, upon the report of the
bridge company, duly filed, the board of valuation
and assessment, after considering the matter, wrote
on the jacket in which the assessment papers are pre-
served the words "No franchise." After the mem-
bers of that board went out of office and different
men were elected to fill the place, the board as reor-
ganized, proceeded to consider de novo the question of
the assessment upon that report, and reached the
conclusion that the company ought to be assessed for
a franchise, and valued the franchise at $662,998,
and demanded a tax thereon, which, with penalty,
amounted to $4,167.89. Thereupon the bridge com-
pany filed in the Franklin circuit court its suit in
equity, and enjoined the assessment before it became
final, and this court, having considered the question,
determined that, while there was no assessment made
by the old board, it had determined that there was
nothing upon which to base a franchise assessment,
and had therefore written the words "No franchise,"
and that that was conclusive both of the state and
bridge company. In illustration of that conclusion,
the court used the following language: "If the board
of 1898 had fixed a valuation of $100,000 on appellee's
franchise, acting under the same circumstances as
shown in this case, and appellee had paid the tax,
could appellant and his associates, constituting the
present board, have ignored that action, and revalued

and reassessed the franchise? If they could, then there is no end to this thing. Nor would there be to any assessment or listing of any property for taxation by any assessing board or assessor. We are of the opinion, and hold, that when the proper assessing officers, within the time and substantially the manner prescribed by the statute, have acted in considering and fixing the valuation upon property liable to assessment for taxation, and no relief has been obtained within the time allowed by statute for correcting their action, if erroneous, that action is final. The judgment and action of the assessor based upon the legal evidence then obtainable and at hand, and as fixed by statute, when recorded in the proper tax lists, in the very nature of things should be conclusive upon the state, as well as against the taxpayer. Such being the judgment below, it is affirmed.'' That opinion was delivered by Judge O'Rear.

In the case of C., N. O. & T. P. R. R. Co. v. Commonwealth, 115 Ky. 281, 72 S. W. 1119 (opinion by Judge O'Rear), in which the same question arose, it was said: ''Under the authority of Coulter, Auditor, v. Louisville Bridge Company, we hold that the action of the board was conclusive, and after the expiration of the time for hearing complaints for reduction is binding alike upon the state and the railroad company.''

In Commonwealth v. American Tobacco Co., 96 S. W. 466, 29 Ky. Law Rep. 746 (opinion by Judge Hobson), the Bridge Company Case was again approved; and in the case of Commonwealth v. Ledman, 127 Ky. 621, 106 S. W. 247, 32 Ky. Law Rep. 247 (opinion by Judge Lassing), where the same question was presented, it was said: ''From the report as filed by the company and such other information as it may

possess it (referring to the board) assesses the property at a fair valuation, and when once so assessed the action of the board is final and conclusive, and no further action can be taken leading to a further assessment or revaluation of the property.''

In the case of Commonwealth v. Southern Pacific, 120 S. W. 311 (decided last June), marked to be officially reported—opinion by Judge Hobson—the same question was again presented, and Judge Hobson quoted from the Bridge Company Cases the language which is quoted above.

But the opinion of the court in this case goes further, much further, than it is said the opinion in the Hager Case went, because it must be admitted, and I think is substantially admitted in the opinion, that the board of valuation and assessment must have omitted to make an assessment before the local officers, acting in a supplementary way, in other words, performing the substituted duty, could have proceeded at all. And yet it is said that even though the board had made the assessment for local purposes, before the act of 1906 became operative, as it was its clear duty to do—in other words, had not failed or omitted to do its duty in respect to the local assessment—still it would have been the duty of the officers charged with the performance of the substitute duty to have ignored the assessment and performed their supposed substitute duty, without the existence of the jurisdictional fact necessary as a basis for the right to proceed, and in so doing should ignore the assessment duly and properly made, and should assume there had been a failure of duty on the part of those officers charged primarily with the duty.

If this can be done, then, in the language of the court, ''Where is this thing to end?'' If the con-

clusion of the court is right, then the same thing would be true, even if the taxpayer had paid the taxes due on the assessment.   Such a conclusion would be entirely unprecedented and appalling to the profession and to the state.   That conclusion of the court is worked out on the theory that the law of 1906 is retroactive in its operation to such an extent as to make it amount to a legislative command on the local officers to ignore assessments for the year 1906 and to proceed with the assessment without what has universally been conceded to be the necessary basis for such proceeding.   I think it must be admitted that the legislative language be so plain as to exclude all doubt before such a construction could be placed upon it.   There should be no possible escape from it.

The most critical examination of the statute fails to disclose a single sentence pointing to the conclusion that the Legislature intended the act to apply to local taxes for the year 1906.   But the whole language and spirit of the act is to the contrary—that it was intended to act only prospectively.   The Legislature is presumed to have known (and a large majority of the members did know) that even before the act was passed, and certainly long before the act became operative, all of the local assessments had been made for the tax of 1906, and that perhaps 95 per cent. of the tax due thereon had been paid.

Under these circumstances there is not the slightest reason for supposing that the Legislature intended anything but a prospective operation.   The only section in the act that bears to the slightest extent upon the assessment of local taxes is section 4 of the original act (section 4092c, Carroll's St. 1909, Russell's St. Sec. 6078), and copied in full in the opinion, and certainly there is no language in that section in-

dicating anything but a prospective operation. That section provides that the assessment for local purposes shall be made "at the same time and manner as prescribed by law for the return of the assessment of personal property therein." An examination of the statutes upon that question shows that the county assessment must be completed by January 1st. Ky. St. sections 4046-4059 (sections 5937-5951). The assessment in cities of the first class must be completed, and taxes are due thereon, by January 3d. Section 2997 (945). In none of the other cities is the assessment delayed longer than May 1st. In cities of the third class the assessment must be completed by March 10th. Under such conditions it seems to me to be absolutely plain that, when the Legislature declared the assessment for local purposes under the act of 1906 should be "at the same time" that other assessments for local purposes were made, it could not have contemplated any other assessment before the next one after the adoption of the act. This proposition seems to me to be so plain that no argument can make it plainer.

The court quotes, as though it should be given a preponderating influence, section 4092 of the Kentucky Statutes, giving the banks until after April 15th to file their reports before the Auditor; but that section of the act became wholly inoperative when the Legislature determined it would not add an emergency clause, but would let the act become operative under the Constitution, 90 days after the adjournment. In the next place, the section has absolutely nothing to do with local assessments, but only state taxes, as the reports for local purposes must be made to the local officers at an entirely different time, and only the reports which are to serve as a basis for

state taxes are returned to the Auditor. The court says: "The state may provide for the retrospective assessment of property." That is, of course, conceded; but the question is, Has it done so? Having seen that the language, and the spirit, too, in my judgment, really point unerringly to a strictly prospective construction, I shall now briefly consider what the result of the authorities is.

In Endlich on Interpretation of Statutes, Sec. 271, it is said: "Indeed, the rule to be derived from a comparison of a vast number of judicial utterances on this subject seems to be that, even in the absence of constitutional obstacles to retroaction, a construction giving to a statute a prospective operation is always to be preferred, unless a purpose to give it a retrospective force is expressed by clear and positive command, or to be inferred by necessary, unequivocal, and unavoidable implication from the words of the statute taken by themselves, and in connection with the subject-matter and the occasion of the enactment admitting of no reasonable doubt, by precluding all questions as to such intention."

This court, in the case of Watts v. Commonwealth, 78 Ky. 331, said: "It is a sound rule of construction that a statute shall have a prospective operation only, unless its terms show clearly a legislative intention that it operate retrospectively." And in Lawrence v. City of Louisville, 96 Ky. 598, 29 S. W. 451, 27 L. R. A. 560, 49 Am. St. Rep. 309, it is said: "In some cases retrospective legislation may be upheld. However, the words of a statute ought not to have a retrospective operation unless they are so clear, strong, and impressive that no other meaning can be annexed to them, or unless the intention of the Legislature cannot be otherwise satisfied." See, also, the case

of Ohio Valley Telephone Co. v. City of Louisville, 123 Ky. 193, 94 S. W. 17, 29 Ky. Law Rep. 631, which in some of its aspects is strikingly like this case. In that case we said: ''The fiscal year of the city of Louisville, then as now, began on the 1st day of September and ended on the 31st day of August in each year. All property was assessed for municipal purposes as of the 1st of September of each year, and the lien of the city for taxes of a given year began on that day; so that when the act of November 11, 1892, authorizing the assessment of corporate franchises for state and municipal taxation, became a law, more than two months of the fiscal year for which the tax bill herein sued on issued had already expired, and, unless the rule against retrospective taxation is to be ignored, there is no legal foundation for it.''

The Supreme Court, in the case of United States v. American Sugar Co., 202 U. S. 577, 26 Sup. Ct. 719, 50 L. Ed. 1149 said: ''We are to remember there is a presumption against retrospective operation, and we have said that words in a statute ought not to have such operation 'unless they are so clear, strong, and imperative that no other meaning can be annexed to them,' or 'unless the intention of the Legislature cannot be otherwise satisfied.' '' In United States v. Burr, 159 U. S. 78, 15 Sup. Ct. 1002, 40 L. Ed. 82, there was under consideration of the United States court a statute which took effect August 28, 1894, but the first section of which provided as follows: ''That on and after the 1st day of August, 1894, unless otherwise specially provided for in this act, there shall be levied, collected and paid upon articles imported from foreign countries or withdrawn from consumption and mentioned in the schedules herein contained, the

rates of duty which are by the schedules and para-
graphs respectively prescribed, viz." It was held
that, notwithstanding this language, the act did not
apply to transactions completed when the act became
a law; that is, to goods which were imported between
August 1st and August 28th.

Without burdening this opinion unnecessarily with
authorities, it is sufficient to say that both in this court
and in the Supreme Court the principle is thoroughly
established that a retrospective construction will not
be given to a statute unless, in the language of this
court in the Watts Case, supra, its terms "show clear-
ly a legislative intention that it operate retrospec-
tively," and in the Lawrence Case, supra, these terms
"must be so clear, strong, and impressive that no
other meaning can be annexed to them," and as stated
by the Supreme Court in the Sugar Company Case,
"these terms must be so strong, clear, and impres-
sive that no other meaning can be annexed to them."
With the authorities of these two courts being so em-
phatic upon this proposition, I do not see how it can
be legally possible to conclude that the Legislature
intended the act of 1906 to be given a retrospective
operation, so as to include the tax for 1906, assessable
in this instance as of March 10th.

For these reasons, I am constrained to dissent from
the opinion of the majority of the court.